# United States Court of Appeals
## For the First Circuit

No. 21-1330

EMIGRANT RESIDENTIAL LLC,

Plaintiff, Appellee,

v.

LINDA S. PINTI and LESLEY R. PHILLIPS,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Thompson, Selya, and Kayatta,
Circuit Judges.

Eric E. Renner, with whom Renner Law, LLC was on brief, for
appellants.
Grace C. Ross and Sarah McKee on brief pro se, amici curiae.
Brian C. Linehan, with whom Reneau J. Longoria and Doonan,
Graves & Longoria, LLC were on brief, for appellee.

June 17, 2022

**SELYA**, **Circuit Judge**.  This case revolves around a mortgage that seems to have taken on a life of its own.  The dispositive issue in the appeal now before us is whether the district court abused its discretion in denying the defendants' motion to defer the adjudication of a pending motion for summary judgment and proceeding to grant summary judgment.  See Fed. R. Civ. P. 56(d).  Concluding that the defendants were entitled to some limited discovery and that, therefore, an abuse of discretion occurred, we vacate the entry of summary judgment, affirm in part and reverse in part the denial of the defendants' Federal Rule of Civil Procedure 56(d) motion, and remand for further proceedings consistent with this opinion.

**I**

While this appeal chiefly concerns Rule 56(d) discovery, the back story stretches over more than a decade and implicates several separate lawsuits.  See Pinti v. Emigrant Mortg. Co. (Pinti I), 33 N.E.3d 1213 (Mass. 2015); Ruling Tr., Emigrant Mortg. Co. v. Pinti (Pinti II), No. 16-11136, ECF No. 109 (D. Mass. Jan. 11, 2019) [hereinafter Pinti II Ruling]; Emigrant Residential LLC v. Pinti (Pinti III), No. 19-12258, 2021 WL 1131812 (D. Mass. Mar. 24, 2021).  We sketch the relevant facts and the tangled litigation history with as much brevity as the issues on appeal permit. Unless otherwise indicated, the facts that we recount are either

- 2 -

undisputed or based upon supportable findings made in earlier cases.

In 1982, Lesley R. Phillips purchased a residential condominium unit (the Property) in a building located at 1643 Cambridge Street, Cambridge, Massachusetts. See Pinti I, 33 N.E.3d at 1214-15. Since 1987, Phillips's spouse, Linda S. Pinti, has lived there with her. Shortly after the couple married in 2005, Pinti's name was added to the deed. See id. at 1215.

On March 13, 2008, Pinti and Phillips (collectively, the Homeowners) refinanced an existing home equity loan. They executed and delivered a promissory note (the Note) in the face amount of $160,000 to Emigrant Mortgage Company, Inc. (EMC), a subsidiary of Emigrant Bank.[1] See Pinti III, 2021 WL 1131812, at *1. The Note was secured by a duly recorded mortgage on the Property (the Mortgage), granted to EMC by the Homeowners. See id. Phillips — though a signatory to the Note and the mortgage agreement — was specifically excepted from personal liability on the Note.

As time went by, the Homeowners fell behind on their mortgage payments. See Pinti I, 33 N.E.3d at 1215. On September 29, 2009, EMC brought the arrearages to the Homeowners' attention, notified them of their right under the Mortgage to cure

---

[1] Emigrant Bank was previously known (and is, in some materials, still referred to) as Emigrant Savings Bank. For ease in exposition, we refer to the bank throughout as Emigrant Bank.

their default within ninety days, and advised them that if they failed to cure, EMC could invoke "the statutory power of sale" (a nonjudicial foreclosure mechanism).[2]  See id.; Mass. Gen. Laws ch. 183, § 21.   The Homeowners allege that they attempted unsuccessfully to negotiate a modification of their payment terms with EMC, but the record is tenebrous both as to the Homeowners' efforts and as to EMC's alleged rebuff.  What is clear, though, is that by the expiration of the ninety-day notice period on December 28, 2009, the Homeowners had not cured the default.  See Pinti I, 33 N.E.3d at 1215.

Around the same time that EMC's minuet with the Homeowners was beginning, the Emigrant Bank entities were shuffling around the documents that held the key to their rights under the Mortgage.  See Pinti II Ruling at 12-14. On November 30, 2009, EMC executed an assignment of the Mortgage to ESB-MH Holdings, LLC (ESB-MH), another Emigrant Bank subsidiary.  See id. That assignment was not recorded.  On the same date, EMC also executed an allonge to the Note, making the Note payable to ESB-MH.  See id.  Although neither the Mortgage nor the Note were physically delivered to ESB-MH, both EMC and ESB-MH regarded ESB-

_____

[2] The mortgage agreement also provided that EMC furnish notice as to the rights of the Homeowners, qua mortgagors, to contest foreclosure through legal action.  See Pinti I, 33 N.E.3d at 1215. That requirement became the focal point of a subsequent phase of the litigation between the parties.  See id. at 1215-23.

MH as the owner/holder of the Mortgage and the Note. See id. at 15-17.

The picture soon grew more complicated. With a financial crisis rocking the nation in the 2008-2009 time frame, the possibility arose that Emigrant Bank would need to use portions of its mortgage portfolio to secure credit from the Federal Home Loan Bank of New York (FHLBNY), a wholesale mortgage lender that offers credit to other banks. To assure that this could be done with celerity, ESB-MH executed a second assignment of the Mortgage and the Note to FHLBNY on November 30, 2009. See id. at 16-17. This assignment was not recorded and — for aught that appears — neither it, the mortgage documents, nor the Note were delivered to FHLBNY. See id.

On September 22, 2010, Pinti filed for Chapter 7 bankruptcy. See Pinti III, 2021 WL 1131812, at *2; 11 U.S.C. §§ 701-728. She received a discharge on February 4, 2011. See Pinti III, 2021 WL 1131812, at *2. As a result, Pinti's liability on the Note was extinguished at that time.

In August of 2011, Pinti sent a qualified written request to EMC asking it to identify the holder of the Mortgage and the owner of the Note. See Pinti I, 33 N.E.3d at 1216; see also 12 U.S.C. § 2605(e)(1) (describing "qualified written request"). On August 22, 2011, EMC responded. See Pinti I, 33 N.E.3d at 1216. It stated that ESB-MH was "[t]he owner of the loan" but that EMC

was "prosecuting the foreclosure action as the holder and servicer of the loan" through a subservicing relationship. See id. EMC added that it retained possession of the original mortgage documents and the Note.

Over the course of three consecutive Tuesdays in June of 2012, EMC published notice of the foreclosure sale in the Boston Herald. See id. It proceeded to hold the foreclosure sale on August 9, 2012. An unrelated party — Harold Wilion — purchased the Property at the foreclosure sale for $260,000. See Pinti III, 2021 WL 1131812, at *2. EMC gave Wilion a foreclosure deed dated September 10, 2012, which Wilion recorded shortly thereafter. See id.

After EMC received payment from Wilion, an employee of EMC prepared a discharge of the Mortgage and sent it to the Homeowners. See id. The parties dispute whether EMC had established procedures for this process and whether the employee(s) who prepared and sent the discharge were abiding by such procedures. At any rate, EMC did not return the Note to the Homeowners nor did it give them any other indication that the loan had been repaid in full. See id.

In October of 2012, Wilion filed a summary process action in a state district court, seeking to evict the Homeowners. See Pinti I, 33 N.E.3d at 1216. The Homeowners defended that action. And mindful that the best defense is sometimes a good offense,

they also sued Wilion and EMC in the state superior court on January 31, 2013, seeking to declare the foreclosure void. See id. Their suit was premised on a golconda of theories, including a claim that the notice of default sent to them did not comply with the requirements specified in the mortgage documents. See id. EMC moved to dismiss and Wilion moved for summary judgment. See id. at 1216-17. The superior court granted both motions. See id. at 1217.

The Homeowners appealed. See id. The Massachusetts Supreme Judicial Court (SJC) assumed jurisdiction over the appeal. See id.; Mass. Gen. Laws ch. 211A, § 10(A). That court concluded that EMC did not strictly comply with the notice terms set forth in the mortgage documents, reversed the superior court decision, and declared the foreclosure void. See Pinti I, 33 N.E.3d at 1218, 1227-28.

The SJC handed down its ukase on July 17, 2015. See id. at 1213. On July 29, the Homeowners recorded the mortgage discharge previously forwarded to them by EMC. See Pinti III, 2021 WL 1131812, at *3. An Emigrant Bank entity thereafter returned the purchase money to Wilion, who surrendered his claim to the Property. See id.

That was not the end of the matter. EMC decided to try its luck in a different venue and, on June 17, 2016, filed suit against the Homeowners in the United States District Court for the

- 7 -

District of Massachusetts. See id. It sought, among other things, an order striking the recorded mortgage discharge and a declaration that EMC was the lawful owner of the Property through foreclosure by entry. See id.; see also Complaint, Pinti II, No. 16-11136, ECF No. 1 (D. Mass. June 17, 2016). One of EMC's core contentions was that the discharge was mistakenly prepared and erroneously delivered.

Following some preliminary motion practice, the parties conducted discovery addressed both to EMC's standing to pursue its claims and to the merits. In the process, the Homeowners were afforded a full and fair opportunity to pursue discovery on the provenance of the mortgage discharge and EMC's right to conduct a foreclosure by entry.

After granting in part and denying in part summary judgment because issues of fact remained as to both standing and the merits, the district court convened a bench trial. The court bifurcated the trial, though, electing to address first the issues related to standing. Finding that EMC was no longer the holder of the Note and, thus, that it lacked standing to sue, the court dismissed the action without prejudice. See Pinti II Ruling at 17. The court confirmed that the Homeowners had not been allowed to conduct discovery with respect to the physical Note (which was, and remains, in the custody of the district court). See id. at 21-22.

- 8 -

EMC's motion for reconsideration was denied on September 19, 2019. See Order Denying Motion for Reconsideration, Pinti II, No. 16-11136, ECF No. 121 (D. Mass. Sept. 13, 2019). On the heels of this setback, the Emigrant Bank entities attempted to sort out their standing issues. On September 30, 2019, they recorded the 2009 FHLBNY assignment and an assignment back from FHLBNY to a new player, Emigrant Residential, LLC (Emigrant Residential) — an entity controlled by Emigrant Bank.

Approximately three weeks later, Emigrant Residential sued the Homeowners in the United States District Court for the District of Massachusetts. See Pinti III, 2021 WL 1131812, at *4. It invoked the court's diversity jurisdiction, see 28 U.S.C. § 1332(a),[3] and sought a declaration striking the mortgage discharge from the land records pertaining to the Property. Attached to its complaint were copies of the Mortgage, the Note, the various assignments, and other documents (including a certificate of merger indicating that Emigrant Residential is the successor-by-merger to ESB-MH).

---

[3] The citizenship of Emigrant Residential, like that of any other limited liability company, is determined by the citizenship of its members. See D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 125 (1st Cir. 2011). Through a show-cause order, we confirmed that the sole member of Emigrant Residential — Emigrant Bank — is a New York corporation that has its principal place of business in New York. Because the Homeowners are citizens of Massachusetts, diversity of citizenship is complete.

- 9 -

In due course, the Homeowners filed an answer and a slew of counterclaims. Emigrant Residential replied to the counterclaims and, on June 9, 2020, the parties filed their joint case-management statement. See Fed. R. Civ. P. 26(f). There, the parties set out their respective positions regarding potential discovery. Emigrant Residential took the position that all relevant discovery had been completed during the earlier state-court and federal-court cases. Any additional discovery, it maintained, should be limited to supplementation of previous disclosures and discovery responses. The Homeowners demurred, asserting that additional discovery was required.

On June 17, Emigrant Residential moved for summary judgment. The next day, the district court held a scheduling conference. Following that conference, the court stated that it was "aware of the unique posture of the case," set a briefing schedule for the summary judgment motion, and stayed "[a]ny discovery" pending the resolution of that motion.

Before their opposition to the summary judgment motion was due, the Homeowners filed a motion under Rule 56(d) seeking additional discovery and requesting that adjudication of the pending summary judgment motion be deferred until that additional discovery was completed. Emigrant Residential opposed the Rule 56(d) motion, contending that discovery had been available in the earlier actions and that, in any event, the discovery sought would

not affect the outcome of the pending summary judgment motion. A reply and a sur-reply followed.

Without explanation, the district court summarily denied the Rule 56(d) motion. Once the parties had filed their briefs on the summary judgment motion itself, the court held a non-evidentiary hearing on February 11, 2021. The court reserved decision. Some weeks later, it issued a brief rescript, in which it held that Emigrant Residential was entitled to summary judgment on all claims. See Pinti III, 2021 WL 1131812, at *10. This timely appeal ensued.

## II

In this court, the Homeowners make two principal arguments. First, they argue that the district court abused its discretion in denying their Rule 56(d) motion for discovery. Second, they argue that the district court erred in granting summary judgment against them. Because we conclude that the district court abused its discretion in denying the Homeowners' Rule 56(d) motion in its totality, we do not reach the merits; instead, we vacate the summary judgment order pro forma.

We review the disposition of a Rule 56(d) motion for abuse of discretion. See Rivera-Almodóvar v. Instituto Socioenconómico Comunitario, Inc., 730 F.3d 23, 29 (1st Cir. 2013). Although this standard is deferential, we remain mindful that district courts must analyze issues arising under the rule in line

- 11 -

with the rule's core purpose: to "protect[] a litigant who justifiably needs additional time to respond in an effective manner to a summary judgment motion." Id. at 28; see In re PHC, Inc. S'holder Litig., 762 F.3d 138, 143 (1st Cir. 2014). Consistent with this core purpose, "district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter." Resol. Tr. Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994).

We pause at this juncture to iron out a wrinkle regarding our precedents in this area. Prior to 2010, what is now Rule 56(d) was denominated as Rule 56(f). See, e.g., id.; Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1988); see also Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment. Although the text of this subsection has undergone minor revisions, its substance remains essentially the same. Consequently, we treat cases decided under former Rule 56(f) as authoritative when deciding post-2010 cases arising under Rule 56(d). See Nieves-Romero v. United States, 715 F.3d 375, 381 n.3 (1st Cir. 2013).

Rule 56(d) provides:

if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion [for summary judgment] or deny it; (2) allow time to obtain affidavits or declarations or to take

discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The rule "provides a safety valve for claimants genuinely in need of further time to marshal 'facts, essential to justify [their] opposition . . . to a summary judgment motion.'" Reid v. New Hampshire, 56 F.3d 332, 341 (1st Cir. 1995) (alteration in original) (quoting Mattoon v. City of Pittsfield, 980 F.2d 1, 7 (1st Cir. 1992)).

In the mine-run of cases, the crucial inquiry under Rule 56(d) is whether the movant has had a full and fair opportunity to conduct discovery needed to mount an effective opposition to a summary judgment motion. See Rivera-Almodóvar, 730 F.3d at 28. When the movant shows that she has not had such an opportunity, "a strong presumption arises in favor of relief." N. Bridge Assocs., 22 F.3d at 1203. Consistent with the district court's broad discretion to manage discovery generally, discovery under the aegis of Rule 56(d) need not be authorized wholesale but, rather, may be tailored to the circumstances at hand. See, e.g., Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv., 323 F.3d 767, 775 (9th Cir. 2003).

Rule 56(d) is not meant to clear the way for additional discovery on demand. A party seeking additional discovery must provide the court with:

> a timely statement — if not by affidavit, then
> in some other authoritative manner — that

- 13 -

> (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion.

Vélez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir. 2004). We have characterized this showing as encompassing five elements: "authoritativeness, timeliness, good cause, utility, and materiality." N. Bridge Assocs., 22 F.3d at 1203.

This taxonomy is "not inflexible," and we afford district courts "considerable discretion" with respect to the interplay of these five elements. See Id. Depending on the circumstances, "one or more" of them "may be relaxed, or even excused, to address the exigencies of a particular case." Id. Conversely, a short fall in any one of them may — again, depending on the circumstances — suffice to scuttle a Rule 56(d) motion. See id.

The affidavit submitted with the Homeowners' Rule 56(d) motion mapped out several areas that they wished to explore through additional discovery:

- Discovery about the provenance of the ostensibly mistaken mortgage discharge and how the Emigrant Bank entities reacted to it.

- 14 -

- Discovery about the EMC employee who prepared and transmitted the mortgage discharge.

- Discovery about the relationships among EMC, ESB-MH, and Emigrant Residential, including discovery about the scope of EMC's powers under its "subservicing relationship" with Emigrant Residential.

- Discovery about the authenticity of the Note, including examination by a "Paper Scientist and Forensic document expert."

- Discovery about whether Emigrant Residential or any other Emigrant Bank entity charged off the value of the Note for tax purposes.

- Discovery about whether and, if so, at what points, FHLBNY owned the Mortgage, including discovery about the 2019 assignments.[4]

In resisting this motion, Emigrant Residential argues in this court, as it argued below, that the Homeowners failed to show good cause for not having obtained any relevant discovery in prior proceedings.  Emigrant Residential says that the Homeowners had a

---

[4] We say "assignments" because this prospective discovery encompassed both the 2009 assignment to FHLBNY (which was not recorded until 2019) and the 2019 assignment from FHLBNY to Emigrant Residential.  We refer throughout to these two assignments, collectively, as "the 2019 assignments."

full and fair opportunity to secure the requested materials in earlier cases. In addition, Emigrant Residential insists that additional discovery would be futile.

We start with the question of whether the Homeowners had a full and fair opportunity to conduct discovery in earlier cases. Emigrant Residential argues that the factual development of the issues in Pinti I and the extensive discovery in Pinti II, coupled with the substantial overlap in the issues and parties, undermines any claim that the Homeowners' Rule 56(d) motion is supported by good cause.

The absence of good cause ordinarily will be reason enough to deny Rule 56(d) discovery. See Rivera-Almodóvar, 730 F.3d at 29. Inspecting the lion's share of the Homeowners' anticipated discovery through this prism, we find Emigrant Residential's objections persuasive. After all, whether good cause exists for additional discovery "must be viewed against the historical background of the litigation." See N. Bridge Assocs., 22 F.3d at 1205.

That view is enlightening here. When a party has had a full and fair opportunity to obtain relevant facts earlier in a case and has forgone that opportunity, there will seldom be good cause to grant the party's request for additional discovery through the medium of Rule 56(d). See, e.g., Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 5 (1st Cir. 2004); Paterson-Leitch, 840

- 16 -

F.2d at 989. We see no reason why that logic should not apply in this instance. To all intents and purposes, this case is a continuation of Pinti II. It was filed a few weeks after the district court denied EMC's motion for reconsideration of the standing issue in Pinti II and the parties are virtually identical.[5] The operative claim — that the discharge was prepared by mistake and delivered in error — is the same in both cases. Questions about the ownership and custody of the Note, the effect of various early assignments, and the like are common to both cases.

Given this close similarity of parties and issues, we think that it was within the district court's discretion to look to the circumstances of Pinti II in determining whether the Homeowners had a full and fair opportunity to gather the requested discovery before they made their Rule 56(d) motion. And looking to Pinti II is instructive.

For one thing, the incentives were the same in both cases. For another thing, discovery was generally available in Pinti II (with exceptions that we will discuss infra). Last — but far from least — the parties undertook discovery in Pinti II, culminating in their joint assurance to the Pinti II court that

_____

[5] The only difference is that EMC was the plaintiff in Pinti II and Emigrant Residential is the plaintiff here. That difference is unimportant: both corporations are subsidiaries of Emigrant Bank and, thus, are under common control.

all necessary discovery had been completed and that they were ready to proceed to trial.

Against this backdrop, we conclude that — for the most part — the Homeowners had a full and fair opportunity in Pinti II to conduct the discovery requested here. To that extent, then, they have failed to show good cause to support their Rule 56(d) motion. See, e.g., Vargas-Ruiz, 368 F.3d at 5 (finding additional discovery unwarranted when party "had available to him a full complement of discovery devices" earlier in the case but "chose not to use these devices in a timely fashion"); Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986) (noting that it is not an abuse of discretion to deny Rule 56(f) request when movant has "fail[ed] to pursue discovery diligently before summary judgment").

We say "for the most part" because there are two areas of discovery that stand separate and apart. The first area involves the authenticity of the Note and its chain of custody. In Pinti II, the Homeowners had proposed the engagement of a document examiner as an expert and sought discovery on this complex of issues. The Pinti II court denied their request. When the court later dismissed the case on standing grounds, it acknowledged that the Homeowners had not been afforded any opportunity to conduct discovery on this complex of issues. See Pinti II Ruling at 21-22.

- 18 -

The second area of unexplored discovery concerns the 2019 assignments and the light they might shed on ownership and custody of the Note. See supra note 4. The first of these assignments to FHLBNY was not recorded until the summer of 2019, and the second did not come into existence until that time. These actions took place after the conclusion of Pinti II. A fortiori, the Homeowners had no opportunity to conduct discovery as to either of these assignments and/or the attendant facts.

We summarize succinctly. Given the circumstances described above and given the immediate stay of discovery ordered by the district court in this case, the Homeowners have shown good cause to undertake additional discovery in the two areas that we have identified.[6]

Let us be perfectly clear. Speculation that a note might not be authentic and that assignments might have been mishandled does not necessarily justify — in a garden-variety foreclosure case — a need for further discovery of the volume and type generated by this litigation. Here, however, we have a rather unusual record, showing significant and repeated missteps by the Emigrant entities in their handling of pertinent documents. It is

---

[6] Emigrant Residential does not contend that the elements of authoritativeness, timeliness, or materiality are lacking with respect to the Homeowners' request for additional discovery regarding either the authenticity and chain of custody of the Note or the facts surrounding the 2019 assignments. Nor could it: the record makes manifest that each of those elements is present.

just such a record that makes further narrowly targeted inquiry "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Even so, this warranted discovery does not open the floodgates for cascading discovery of every type and kind. The Homeowners simply have not shown good cause to conduct additional discovery in any other areas. That failure is sufficient to ground the district court's denial of additional discovery in all such areas.

Emigrant Residential has a second blade in its scabbard. It says that additional discovery in these unexplored areas would be futile (or put another way, that the Homeowners' discovery requests lack utility). In support, it points to the district court's rescript, which suggests that such discovery would have been fruitless because "a mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." Pinti III, 2021 WL 1131812, at *5 (quoting Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 291 (1st Cir. 2013)).

That is true as far as it goes — but it does not take Emigrant Residential very far. Additional discovery may reveal defects that call into question the chain of custody of the Note or its authenticity. So, too, additional discovery may reveal circumstances rendering the 2019 assignments void (not merely

voidable).  And it is common ground that "a mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee)." Culhane, 708 F.3d at 291.  Given these possibilities, Emigrant Residential's futility argument is itself futile.

We do not gainsay that a district court has wide discretion both in the adjudication of Rule 56(d) motions and in the management of discovery.  See Rivera-Almodóvar, 730 F.3d at 28; N. Bridge Assocs., 22 F.3d at 1203.  But when — as in this case — parties opposing summary judgment make a timely showing in a Rule 56(d) proffer that there are important areas of legitimate inquiry into which they have not had a full and fair opportunity to inquire, a district court may commit an abuse of discretion by denying discovery into those areas.  See In re PHC, 762 F.3d at 145 (concluding that "district court's disregard of plaintiffs' detailed, plausible, and comprehensive Rule 56 Affidavit was plainly wrong and an abuse of discretion") (collecting cases). This is such a case.  The district court stayed all discovery at the inception of the case.  Then, when confronted with a timely and suitably detailed Rule 56(d) motion, the court refused to allow discovery in two significant areas — areas in which the Homeowners had not had any previous opportunity to conduct discovery.  We hold, therefore, that denying the Homeowners' Rule 56(d) motion

- 21 -

with respect to discovery in those two virgin areas was an abuse of discretion.

The proper office of Rule 56(d) is to ensure that a party opposing a motion for summary judgment has an adequate opportunity to access facts that would meaningfully inform her efforts to oppose that motion. Where, as here, additional discovery under Rule 56(d) is warranted, the entry of summary judgment is inappropriate as to claims that may be affected by the fruits of requested discovery. See N. Bridge Assocs., 22 F.3d at 1208-09. We must, therefore, vacate the entry of summary judgment; without prejudice, however, to reconsideration of the summary judgment motion after the Homeowners have completed their Rule 56(d) discovery.

## III

We need go no further. For the reasons elucidated above, we vacate the order granting summary judgment, affirm in part and reverse in part the order denying the Homeowners' Rule 56(d) motion, and remand for further proceedings consistent with this opinion. We direct the district court, on remand, to grant the Homeowners a reasonable opportunity for additional discovery, limited to the issues involving the chain of custody and authenticity of the Note and those involving the 2019 assignments. After the period set for this limited discovery has expired, the district court should entertain supplemental briefing and

arguments with respect to Emigrant Residential's summary judgment motion and proceed to decide that motion anew.  All parties shall bear their own costs.

**<u>So Ordered</u>**.