# United States Court of Appeals
## For the First Circuit

No. 13-1685

THOMAS E. PEREZ, SECRETARY,
UNITED STATES DEPARTMENT OF LABOR,

Plaintiff, Appellee,

v.

LORRAINE ENTERPRISES, INC., d/b/a PICCOLO E POSTO, ET AL.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Lynch, Chief Judge,
Ripple[*] and Selya, Circuit Judges.

Jose A.B. Nolla-Mayoral, Jorge W. Perdomo and Nolla, Palou & Casellas, LLC on brief for appellants.
M. Patricia Smith, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, Maria Van Buren, Senior Attorney, and Steven W. Gardiner, Attorney, on brief for appellee.

October 1, 2014

---

[*]Of the Seventh Circuit, sitting by designation.

**SELYA, Circuit Judge.** Among a host of other beneficial provisions, the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, establishes a federal minimum wage. See id. § 206(a). But Congress carved out an exception to the minimum wage for certain occupations in which tips can reliably be expected to supplement wages. See id. § 203(m). The prototype for this exception is the restaurant industry.

To avail itself of the exception, an employer must satisfy several preconditions. See id. § 203(m). In this case, the Secretary of Labor (the Secretary) charges that a restaurant took advantage of the reduced minimum wage without bothering to comply with the concomitant requirements. The Secretary further charges that the individual defendants are liable for these violations. The district court agreed with the Secretary's contentions and entered summary judgment in the Secretary's favor against the restaurant and the individual defendants. See Solis v. Lorraine Enters., 907 F. Supp. 2d 186, 192-93 (D.P.R. 2012). The court thereafter denied the defendants' motion to alter or amend the judgment. After careful consideration of a chiaroscuro record, we affirm.

## I. BACKGROUND

We rehearse the facts as they appear in the summary judgment record, drawing all reasonable inferences in favor of the

parties opposing summary judgment (here, the defendants).  See Bisbano v. Strine Printing Co., 737 F.3d 104, 106 (1st Cir. 2013).

At the center of this case is a popular restaurant in Guaynabo, Puerto Rico: Piccolo e Posto.  The proprietor is Lorraine Enterprises, Inc., a closely held corporation owned by defendant Lorraine Lago and her husband, Joseph Rao (now deceased).

When the couple opened the restaurant in 2004, Rao directed its operations.  He fell ill in 2006 and the restaurant's general manager, defendant Pedro Gonzalez, assumed more responsibility for its day-to-day operations.  Upon Rao's death two years later, Lago was left to run the restaurant with Gonzalez's help.

In 2008, the Wage and Hour Division of the United States Department of Labor (the Department) commenced an investigation into the restaurant's payroll practices.  This probe began with an audit of the restaurant's payroll summaries and time records for the period March 2006 through March 2008.  The investigator concluded that certain deductions taken from waiters' pay violated the FLSA's minimum wage provisions.  Specifically, the restaurant deducted what it termed a "spillage fee," which the investigator concluded frequently reduced waiters' weekly pay below the minimum wage.  Although the restaurant maintained that waiters earned much more in tips than the payroll summaries indicated, it produced no probative evidence of actual tip income.

The investigator also determined that certain employees had been misclassified as exempt from overtime pay requirements and that proper records of the hours worked by those employees had not been maintained. This determination grounded a conclusion that the restaurant was not in compliance with the FLSA's recordkeeping and overtime pay requirements. See 29 U.S.C. §§ 207, 211(c).

Against this backdrop, the Secretary sued the restaurant, Lago, and Gonzalez, alleging that each defendant, qua employer, was liable for violating the FLSA's minimum wage, overtime, and recordkeeping requirements. Following discovery, the Secretary moved for partial summary judgment on the minimum wage claims, arguing that the spillage fee constituted an impermissible deduction from the employees' wages and that the defendants had failed to provide sufficient notice to employees to enable the defendants to offset their minimum wage obligations. The defendants cross-moved for summary judgment on all of the Secretary's claims. The motions were referred to a magistrate judge. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

The magistrate judge recommended denying the defendants' motion, granting the Secretary's motion (except as to prospective injunctive relief), and awarding damages in the form of payment of wages owed. On de novo review, the district court agreed. The court calculated the wages owed to be $129,057.22 and entered

-4-

judgment for the Secretary against all of the defendants in that amount plus interest.[1]

The defendants seasonably moved to alter or amend the judgment.  See Fed. R. Civ. P. 59(e).  The district court rejected the motion, and this timely appeal ensued.

## II.  ANALYSIS

We divide our analysis into four segments.  We start with an overview of the FLSA's provisions vis-à-vis tipped employees. The remaining segments correspond to the claims of error advanced on appeal.

### A.  **The Statutory Scheme**.

The FLSA requires employers to pay a prevailing minimum wage and makes failure to do so unlawful.  See 29 U.S.C. §§ 206(a), 215(a)(2).  The statute, however, allows for certain exceptions to the minimum wage rate.  One such exception, known as the "tip credit," stipulates that an employer may pay a tipped employee a cash wage as low as $2.13 per hour and count the tips received to make up the difference between the hourly wage paid and the prevailing hourly minimum wage rate.  See id. § 203(m); 29 C.F.R. § 531.59.

---

[1] This final judgment resolved all of the pending claims. Because the defendants challenge only that portion relating to the minimum wage violations, we eschew any description of the other aspects of the final judgment.

This exception is available to an employer only if certain conditions are met. See 29 U.S.C. § 203(m); Martin v. Tango's Rest., Inc., 969 F.2d 1319, 1322 (1st Cir. 1992). To begin, the exception is unavailable unless the employee is a "tipped employee," that is, an employee who is engaged in a job that customarily and regularly affords him tips of more than $30 per month. See 29 U.S.C. § 203(m), (t). In addition, the employee must retain the tips received. See id. § 203(m). However, the latter requirement does not preclude tip-pooling arrangements in which employees share tips with other employees who themselves customarily and regularly receive tips. See id.

There are, of course, other conditions for tip-credit eligibility. Of particular pertinence for present purposes, the employer must inform the employee in advance that it intends to count a portion of the employee's tips toward the required minimum wage. See id.; Martin, 969 F.2d at 1322. This notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit. See Kilgore v. Outback Steakhouse of Fla., Inc., 160 F.3d 294, 298 (6th Cir. 1998); Reich v. Chez Robert, Inc., 28 F.3d 401, 404 (3d Cir. 1994); Martin, 969 F.2d at 1322.

It is the employer's burden to show that it has satisfied all the requirements for tip-credit eligibility. See Barcellona v.

<u>Tiffany English Pub, Inc.</u>, 597 F.2d 464, 467-68 (5th Cir. 1979).
A failure to satisfy any of these requirements exposes the employer to liability for wages owed as well as liquidated damages. <u>See</u> 29 U.S.C. §§ 215-16.

### B. <u>The Due Process Claim.</u>

The first assignment of error implicates the district court's determination that the defendants failed to provide the waiters appropriate notice of the tip credit (and, therefore, were ineligible to claim it). This is an indirect attack: the defendants argue that their due process rights were violated because they were "ambushed" when the Secretary moved for summary judgment and asserted a lack of notice. Their attack presupposes (incorrectly, we think) that lack of notice is an FLSA violation in and of itself — a putative violation that was neither raised in the Department's investigation nor pleaded in the Secretary's complaint.

The initial barrier that impedes the defendants' path is procedural. The defendants did not mount any due process argument until after the district court had adopted the magistrate judge's recommendation and entered summary judgment against them. A Rule 59(e) motion normally may not be used as a vehicle to raise arguments that could have been (but were not) raised prior to judgment. <u>See</u> <u>Aybar</u> v. <u>Crispin-Reyes</u>, 118 F.3d 10, 16 (1st Cir. 1997); <u>Vasapolli</u> v. <u>Rostoff</u>, 39 F.3d 27, 36 (1st Cir. 1994).

-7-

Because the defendants mounted their due process challenge for the first time in their motion to alter or amend, that challenge is likely waived. See, e.g., In re Redondo Constr. Co., 678 F.3d 115, 122 (1st Cir. 2012) (noting that "arguments presented for the first time in a Rule 59(e) motion ordinarily are deemed forfeited"); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (explaining that issues not raised in objections to magistrate judge's report are ordinarily precluded on appeal).

Here, however, we need not rest on waiver. The denial of a Rule 59(e) motion is reviewed for abuse of discretion. See Negrón-Almeda v. Santiago, 528 F.3d 15, 25 (1st Cir. 2008). Because the defendants' due process challenge is without merit, there was, a fortiori, no abuse of discretion in the district court's denial of the defendants' Rule 59(e) motion.

To be sure, a defendant has an "inalienable right to know in advance the nature of the cause of action being asserted against him." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1171 (1st Cir. 1995). But no infringement of that right occurred here. From the very beginning of the case, the Secretary consistently alleged that the defendants had violated section 206 of the FLSA, which requires an employer to pay an employee the minimum wage set by the statute. See 29 U.S.C. § 206(a). These allegations were sufficient to put the defendants on notice that if they wished to assert eligibility for the tip credit as an exemption from the

-8-

minimum wage requirement, they would have to carry the burden of showing that they met the requirements for such eligibility (one of which is the provision of notice to employees that the minimum wage will be paid to them in part by tips). In other words, the Secretary's charge that the waiters' wages fell below the statutory minimum rate sufficed to put the defendants on notice that their tip-credit defense was in issue. See Guan Ming Lin v. Benihana Nat'l Corp., 275 F.R.D. 165, 171 (S.D.N.Y. 2011). The fact that the Secretary's complaint did not expressly reference the definitional section of the FLSA, in which the tip-credit exception is set forth, was of no moment. See 29 U.S.C. § 203(m).

Even if the Secretary's complaint alone was not sufficient to alert the defendants that employee notice would be relevant to the determination of their liability, the course of the investigation and litigation should have alerted the defendants that their eligibility for the tip credit was a central issue. The defendants' right to claim the tip credit was disputed throughout their negotiations with the Department.

After litigation commenced, the Secretary vigorously pursued the putative unavailability of the tip credit throughout discovery, inquiring during the depositions of both Lago and Gonzalez whether employees had been informed in advance that the defendants used the tip credit to offset minimum wages. Moreover,

the Secretary specifically referred to lack of notice in answers to interrogatories as a basis for disallowing the tip credit.

On this record, it cannot be said that the Secretary "ambushed" the defendants with respect to the notice issue. Where, as here, a party is not waylaid by the opposing party but, rather, turns a blind eye to an issue that is plainly in the case, due process is not offended.[2] Accordingly, the district court did not err in determining that no infringement of the defendants' due process rights had occurred.

## C. __The Minimum Wage Violation__.

The Secretary moved for summary judgment on the minimum wage claim asserting, inter alia, that the defendants were ineligible for the tip credit. The Secretary posited both that the waiters had not received proper notice of the restaurant's intent to credit their tips against the minimum wage and that, in any event, deductions taken from waiters' pay were invalid for FLSA purposes. The district court granted the motion. See Lorraine Enters., 907 F. Supp. 2d at 192.

---

[2] The defendants insinuate that the Department's failure to follow its own investigative protocol contributed to the alleged ambush. But the defendants offer no proof of any particular investigative protocol that the Department ignored, and, in all events, the fact that the Department notified the defendants during the investigation that it was alleging minimum wage violations sufficed to alert them that tip-credit notice was in issue. See Benihana, 275 F.R.D. at 171.

-10-

Because the district court supportably found the notice point dispositive, we start and stop there. The Secretary's assertion of lack of notice was based in part on the deposition testimony of Gonzalez. Gonzalez testified that when he was first hired as a waiter at the restaurant, he was not told that any portion of his tips would count toward the minimum wage. He further testified that, after he became general manager in 2006, newly hired waiters were not informed that any portion of their tips would count toward their wages. Finding this testimony undisputed, the district court concluded that no notice had been given and that, therefore, paying the waiters at a rate below the minimum wage violated the statute. See id. at 191-92.

The defendants maintain that the district court blundered because a genuine issue of material fact existed with respect to notice. This claim of error engenders de novo review. See Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011).

We begin with bedrock: a court may grant summary judgment only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). A "genuine" issue is one on which the evidence would enable a reasonable jury to find the fact in favor of either party. See Vasapolli, 39 F.3d at 32. A "material" fact is one that is relevant in the sense that it has the capacity to change

-11-

the outcome of the jury's determination. See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). As to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact. See Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008); McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). Definite, competent evidence is evidence that is sufficiently probative of an issue that a factfinder could resolve that issue in favor of the nonmoving party based on that evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In the case at hand, the defendants fault the court's reliance on Gonzalez's testimony because the Secretary did not show that Gonzalez was present for the hiring of each of the waiters whom the Secretary alleged were underpaid. But this evidentiary void does not aid the defendants. At the summary judgment stage, the absence of evidence on an issue redounds to the detriment of the party who bears the burden of proof on that issue. See McCarthy, 56 F.3d at 315. On the issue of notice, the defendants bore the burden of proof. See 29 U.S.C. § 203(m); Barcellona, 597 F.2d at 467. Thus, to defeat summary judgment on this issue, the defendants had to do more than point to a dearth of evidence. They had to adduce definite, competent evidence showing that waiters

were informed of the tip credit, see Vineberg, 548 F.3d at 56; Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), and they did not do so.

The defendants resist this conclusion. Their best effort to identify such evidence involves Lago's testimony that her husband informed waiters, prior to hiring them, that a portion of their tips would be counted as wages. Lago added that when the restaurant first opened, a written notice "went out" to some (unspecified) employees that dealt (in some unspecified manner) with tips.[3]

This testimony is not sufficient to constitute definite, competent evidence establishing the existence of a genuine issue of material fact. To block summary judgment, the defendants had to identify evidence in the record from which a jury could reasonably resolve the dispute at issue in their favor. See Anderson, 477 U.S. at 252; Davric Me. Corp. v. Rancourt, 216 F.3d 143, 147 (1st Cir. 2000). Lago, however, never laid a proper basis for these assertions and, thus, such assertions lack sufficient force to influence the summary judgment calculus. See Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 784 (7th Cir. 2007).

---

[3] The record contains no copy of any such written notice, nor does it contain any description of the contents of such a notice. Thus, even if we were to credit Lago's testimony that a written notice was sent to some employees, there is no way to tell whether the notice comported with the statutory requirements.

-13-

Perhaps most important, the record is devoid of any evidence that Lago had any personal knowledge of her husband's actions. She was not involved in management when the restaurant first opened. She did not say — and there is no evidence to support a finding — that she was present when her husband either hired waiters or distributed written notices to them. She did not say — and there is no evidence to support a finding — that she at any time participated directly in the hiring process. While it is true that Lago testified that she was generally familiar with the restaurant's payroll practices, she offered no testimony suggesting that she had personal knowledge regarding whether her husband had informed employees about the tip credit. For aught that appears, her testimony was based upon out-of-court statements that her late husband (or others) made to her and, as such, was not admissible for the truth of the matters asserted. <u>See</u> Fed. R. Evid. 802; <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 49-50 (1st Cir. 1990). In short, Lago's testimony was not significantly probative on the notice issue and, thus, could not thwart summary judgment. <u>See</u> <u>Anderson</u>, 477 U.S. at 249-50, 252.

The defendants have a fallback position. They say that the record contains evidence adequate to show that the waiters had actual or constructive knowledge of the restaurant's intention to claim the tip credit and that this knowledge sufficed to pave the way for the minimum wage exception. The waiters' pay stubs, the

-14-

defendants aver, should have served to put the waitstaff on notice that the restaurant was claiming a tip credit against minimum wage because those stubs reflected a wage lower than the statutory minimum and tip amounts sufficient to bring the waiters' wages up to the minimum. Furthermore, the waiters reported their credit card tips to the restaurant at the end of every shift and then "cashed out."[4] Consequently, they either knew or should have known that their tips were meant to serve as part of their wages.

This argument is unconvincing. The FLSA requires that employees be informed <u>by their employer</u> that the employer intends to treat tips as satisfying a portion of the minimum wage. <u>See</u> 29 U.S.C. § 203(m); <u>Martin</u>, 969 F.2d at 1322. While information on pay stubs might have tended to corroborate direct evidence of notice, the pay stubs themselves are not in evidence and the meager testimony about them is insufficient to support a finding that the defendants had complied with the FLSA's notice requirement. Moreover, the duty to inform is an affirmative duty placed upon the employer, which cannot be satisfied by the mere hope or assumption that employees will either divine their employer's intentions or figure out their statutory entitlements from the way in which the employer conducts its business. <u>See</u> <u>Kilgore</u>, 160 F.3d at 298; <u>see also</u> <u>Dorsey</u> v. <u>TGT Consulting, LLC</u>, 888 F. Supp. 2d 670, 682 (D.

---

[4] "Cashed out" is a shorthand for the process by which waiters receive in cash from the restaurant tips left by customers on credit card vouchers.

Md. 2012) (concluding that employee earning statements that did not contain reference to the federal minimum wage were insufficient to inform employees of tip credit).

### D.  Individual Liability.

The last leg of our journey involves the plaint that the district court erred in entering summary judgment against the individual defendants, Lago and Gonzalez, and that, to cure this error, the court should have granted their motion to alter or amend the judgment.  In support, the defendants complain that Lago and Gonzalez are not persons who, within the purview of the FLSA, may be held personally liable for the undercompensation of employees. See 29 U.S.C. § 203(d) (defining "employer"); see also Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 47 (1st Cir. 2013) (describing "context-dependent 'economic reality' test" used for determining when personal liability should be imposed).

The defendants are foraging in an empty cupboard.  To begin, Lago and Gonzalez admitted in their answer to the complaint that each of them had "active control and management of [the] corporation, regulated the employment of persons employed by [the] corporation, [and] acted directly and indirectly in the interest of [the] corporation in relation to the employees."  These admissions were replicated in the statement of undisputed material facts that accompanied the Secretary's summary judgment motion, see D.P.R.R. 56(b) — admissions that the defendants made only a minimal effort

to qualify by suggesting that they had not personally "implemented the employment practices challenged by the [Secretary]."

The facts admitted would have been difficult to overcome, and Lago and Gonzalez (perhaps recognizing as much) did not seek to challenge the imposition of individual liability as a matter of law. Given the state of the record, it is hard either to fault the Secretary for not offering more detailed proof of the individual defendants' control over the business or to question the district court's imposition of individual liability. After all, litigation adversaries and inquiring courts alike are entitled to take a party's admissions at face value. See Harrington v. City of Nashua, 610 F.3d 24, 31 (1st Cir. 2010); Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992).

To cinch matters, Lago and Gonzalez never questioned the Secretary's claim that they were personally liable before the magistrate judge, nor did they spell out such a plaint in their objections to the magistrate judge's recommended decision. These kinds of omissions are generally regarded as fatal. See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988) (holding categorically that party is not entitled as of right to district judge's de novo review of matter never raised before magistrate judge); Sch. Union No. 37, 617 F.3d at 564 (explaining that only issues raised in party's objections to

magistrate judge's report are subject to review — all others are waived).

There is no need to tarry. Rule 59(e) is an extraordinary remedy, to be used sparingly. See Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). It does not permit a party to turn back the clock, erase the record, and try to reinvent its case after an adverse judgment has entered. See Aybar, 118 F.3d at 16; Vasapolli, 39 F.3d at 36.

In this instance, the defendants admitted a string of material facts strongly suggestive of individual liability. They made no effort either to withdraw those admissions or to pursue a developed argument against individual liability until after both the magistrate judge and the district judge had ruled against them. This was too little and too late. See Aybar, 118 F.3d at 16. Given the chronology of this case, it is transparently clear that the district court did not abuse its discretion in refusing to vacate the judgment as to the individual defendants.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we affirm both the district court's entry of summary judgment in favor of the Secretary and its denial of the defendants' motion to alter or amend that judgment.

**Affirmed.**

-18-