# United States Court of Appeals
## For the First Circuit

No. 22-1066

DORA L. BONNER,

Plaintiff, Appellant,

v.

TRIPLE S MANAGEMENT CORPORATION, TRIPLE-S VIDA, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGivern, U.S. Magistrate Judge]

Before

Montecalvo and Lipez, Circuit Judges.
Burroughs,[*] District Judge.

Monica A. Santiago Vazquez and Dora L. Bonner for appellant.
María D. Trelles-Hernández, with whom Jorge I. Peirats,
Julián R. Rodríguez-Muñoz, and Pietrantoni Méndez & Álvarez LLC
were on brief, for appellees.

May 19, 2023

_____

[*] Of the District of Massachusetts, sitting by designation.

**Burroughs, District Judge.** This appeal follows a grant of summary judgment by the district court against Appellant Dora L. Bonner and in favor of Appellees Triple-S Management Corporation ("TSM") and Triple-S Vida, Inc. ("TSV") (collectively "Appellees" or "Triple-S").[1] In the underlying action, Bonner brought several claims alleging that Triple-S denied her millions of dollars of proceeds from certain certificates, which TSM allegedly invested, and devised a scheme to defraud her by requiring Bonner to pay management fees that purportedly were necessary to release the proceeds to Bonner. Bonner now challenges the district court's (i) denial of her motion to compel discovery and extend the discovery deadline, as well as the motion for reconsideration of that denial, and (ii) determination that Triple-S was entitled to summary judgment because Triple-S had established as a matter of law that the individuals behind the fraudulent scheme were not related to Triple-S. Finding that the district court did not abuse its discretion in denying Bonner's discovery-related motions and properly considered the evidence at the summary judgment stage, we affirm.

## I. Background

A. Facts

TSM is an independent licensee of the Blue Cross Blue

---

[1] The parties consented to proceed before a magistrate judge. See 28 U.S.C. § 636(c).

Shield Association and a holding company for several insurance companies that offer health, life, and property casualty insurance in Puerto Rico, including TSV, which offers life insurance. In 2013, TSV acquired Atlantic Southern Insurance Company ("ASI"), which sells health, life, and cancer insurance.

In March 2015, Bonner was contacted by an individual who introduced himself as Albert Gamboa Spencer ("Gamboa") and stated that he was an employee at TSV who previously worked at ASI.[2] Gamboa said that he was reaching out to Bonner because someone had attempted to change the beneficiary designation on an investment certificate held by TSV in Bonner's name that was worth more than $8 million.[3]

Following this initial discussion, Bonner undertook to retrieve the funds referenced by Gamboa. To this end, from March 2015 through approximately August 2015, Bonner participated in many phone calls and over one hundred emails with Gamboa and other individuals who claimed to be Triple-S employees, including people who claimed the following names and titles: Feliciano Zelaya, a Financial Manager at TSM; Ramon Ruiz, Chief Executive Officer for TSM; Eugenio Cerra, Jr., "chairman" for TSM; and Emilio Aponte,

---

[2] Gamboa's initial emails to Bonner following the call identified him as the Head of Legal Department, Country Director for Triple-S. His later emails identified him as a Policy Manager.
[3] Bonner was later informed that there were multiple investment certificates in her name.

a TSM board member.

In April 2015, Zelaya instructed Bonner to pay a management fee of $65,438.50 to someone named Maria Elena Ramos de Chang for the funds to be released. Bonner alleges that she paid the fee, but that the funds were nonetheless not released to her. The individuals communicating with Bonner repeatedly claimed various issues prevented them from transferring the funds and directed her to pay more management fees to secure their release. Ultimately, Bonner, after never receiving any funds back from TSM or the people who had identified themselves to her as affiliated with TSM, claimed damages of over $1 million.

B.  Procedural History

In June 2019, Bonner filed an Amended Complaint against Triple-S in the United States District Court for the District of Puerto Rico alleging fraud, breach of contract, and breach of fiduciary duty under Texas state law, as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, all predicated on her belief that TSM and its employees refused to transfer investment proceeds to her, and solicited and received funds from her as a prerequisite for the transfer.

On May 14, 2020, Triple-S filed its Answer to the Amended Complaint raising several affirmative defenses, including that: (1) Triple-S does not invest assets on behalf of individuals; (2)

TSM has no record of ever producing a certificate for over $8 million to Bonner; (3) the individuals who contacted Bonner about the certificate were not then and had never been employees or agents of Triple-S; and (4) Bonner was the victim of an advanced-fee scam by individuals impersonating Triple-S's employees and executives in aid of their fraud.

On February 18, 2021, Bonner served Triple-S with her First Set of Interrogatories and a Request for the Production of Documents ("First Set"). The district court granted Triple-S an extension to April 10, 2021, to respond to the First Set. On April 20, 2021, Triple-S noticed its Responses and Objections to Bonner's First Set, in which it objected to a significant portion of the discovery requests as being overly broad, vague, unduly burdensome, irrelevant, and in some instances, seeking privileged or confidential information.

On July 6, 2021, Bonner filed a "Motion to Compel Defendants to Respond to Interrogatories and Request for Production of Documents, and for an Extension of Discovery Deadline" ("Motion to Compel"), in which she asserted that Triple-S's responses to the First Set were untimely and inadequate, and requested at least a 90-day extension of the discovery deadline from the date of the court's hearing on the motion. Triple-S opposed the motion.

On September 9, 2021, while the Motion to Compel was

still pending, Triple-S filed a Motion for Summary Judgment, arguing that the uncontested facts showed that Bonner was never in contact with actual Triple-S employees or executives, but was instead the victim of a fraud perpetrated by third parties unrelated to TSM.

On September 21, 2021, the district court denied most of Bonner's Motion to Compel with prejudice, with the exception of three interrogatories and two requests for production ("RFPs"). As to those, the district court denied the motion without prejudice and gave the parties ten days to exhaust efforts to resolve the dispute.

About two weeks later, on October 6, 2021, Bonner filed a "Motion for Reconsideration of Order Denying Motion to Compel Discovery" ("Motion for Reconsideration"), maintaining that Triple-S had waived its right to object to the interrogatories and RFPs by failing to answer in a timely manner and by not properly objecting. The district court denied Bonner's Motion for Reconsideration on November 17, 2021.

On December 17, 2021, finding no genuine issue of fact as to whether those behind the fraud were actually associated with TSM, the district court granted summary judgment in favor of Triple-S and dismissed the case.

This appeal followed.

## II. Discussion

Bonner seeks review of (i) the district court's denial of her Motion to Compel and the Motion for Reconsideration of that denial and (ii) the district court's grant of summary judgment in favor of Triple-S. We address each in turn.

### A. Motion to Compel and Motion for Reconsideration

"The trial court has 'broad discretion in ruling on pre-trial management matters,' and we review the court's denial of [the] motion to compel 'for abuse of its considerable discretion.'" Wells Real Estate Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 58 (1st Cir. 2010) (quoting Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 91 (1st Cir. 1996)). "This standard of review is 'not appellant-friendly,' and we 'will intervene in such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" Id. (quoting Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 860 (1st Cir. 2008)).

On appeal, with regard to both the district court's denial of her Motion to Compel and Motion for Reconsideration, Bonner largely relies on the argument made in the Motion for Reconsideration, namely that Triple-S waived its right to object to the discovery (1) by providing untimely responses to the First Set after the April 10, 2021 deadline and (2) by failing to

properly object to the interrogatories and RFPs.

As to timeliness, "[i]f the responding party fails to make a timely objection, or fails to state the reason for an objection, he may be held to have waived any or all of his objections." Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 12 (1st Cir. 1991) (emphasis added). Whether the objections are waived, however, remains in the court's discretion. See id. at 10 ("The choice of sanctions for failing to comply with an order of the district court lies within the sound discretion of the court."). In this case, where Triple-S noticed its responses and objections within 10 days of the deadline to respond and Bonner did not show prejudice from the delay, the district court did not abuse its discretion in finding that Triple-S did not waive its objections based on untimeliness.

The district court also did not abuse its discretion in denying Bonner's Motion to Compel and then the Motion for Reconsideration based on Triple-S's objections of overbreadth and lack of relevance. The Federal Rules of Civil Procedure permit broad discovery, but "discovery, like all matters of procedure, has ultimate and necessary boundaries." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947)). Although Bonner was no doubt entitled to discovery related to her claims, "this warranted discovery does not open the floodgates for cascading discovery of every type and

kind." Emigrant Residential LLC v. Pinti, 37 F.4th 717, 727 (1st Cir. 2022).

Federal Rule of Civil Procedure 33(a)(2) provides that "[a]n interrogatory may relate to any matter that may be inquired into under [Federal Rule of Civil Procedure] 26(b)." Fed. R. Civ. P. 33(a)(2). Federal Rule of Civil Procedure 34, which regulates RFPs, is similarly limited in scope by Rule 26(b). See Fed. R. Civ. P. 34(a). Rule 26(b), in turn, provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"[T]o be discoverable, information need only appear to be 'reasonably calculated to lead to the discovery of admissible evidence.'" Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 52 (1st Cir. 2009) (quoting Cusumano v. Microsoft Corp., 162 F.3d 708, 716 n.5 (1st Cir. 1998)). Bonner relies on the "reasonably calculated" language to argue that her discovery requests were proper.

In reviewing the discovery requests in aid of resolving the Motion to Compel, the district court grouped together Interrogatory 4 and RFPs 2 through 10 by type of information sought and then found that all those requests were overly broad and, in some instances, overly burdensome and not relevant to Bonner's claims.[4] In short, the court equated many of Bonner's discovery requests to a fishing expedition in contravention of Rule 26(b).

Bonner relies on Hickman v. Taylor, 329 U.S. 495 (1947), to counter the district court's characterization of her requests. The issue in that case was "the extent to which a party may inquire into oral and written statements of witnesses, or other information, secured by an adverse party's counsel in the course

---

[4]     As examples, in RFP 2 and RFP 3, Bonner requested all call logs, call records, and other evidence of communication, and all email and text-based chats, respectively, between Triple-S and its subsidiaries in Costa Rica from March 1 to December 31, 2015. RFP 7 asked for any call records between Triple-S or ASI and the FBI, United States Department of the Treasury, United States Homeland Security, or the Nicaraguan government related to victims of scams for the same period. The court denied Bonner's motion as to the three RFPs finding that Bonner could not request "all communications in all forms without tailoring her request as to content or to the specific parties in the communication."

Similarly, in RFP 5, Bonner asked for the production of evidence of all investments that Triple-S or ASI made for its benefit or on behalf of individual clients from January 1 to December 31, 2015. In RFP 8, she requested any documents related to penalties and fines that were imposed by any government entity on Triple-S or ASI related to wire or ACH transfers during the period of March 1 to December 31, 2015. The district court found that these RFPs sought "sweeping categories of Defendants' financial records" and lacked relevance where Triple-S had certified that neither it nor ASI invest assets on behalf of individuals.

- 10 -

of preparation for possible litigation after a claim has arisen." Id. at 497. In Hickman, the Court adopted the attorney work product doctrine, providing for the protection of written materials obtained or prepared by an attorney, unless such information was essential to opposing counsel's case and could not be obtained through other means without an undue burden. See id. at 511-12. The work product doctrine is not implicated in this case, and the holding in Hickman has no bearing on the analysis here. Bonner is correct that, in its discussion of the attorney work product doctrine, the Hickman Court acknowledged that "deposition-discovery rules are to be accorded a broad and liberal treatment," but that Court also stressed that "discovery, like all matters of procedure, has ultimate and necessary boundaries." Id. And one of those boundaries is Rule 26(b), which provides limitations "when the inquiry touches upon the irrelevant." Id. at 508.

Moreover, under a 2000 amendment to Rule 26(b)(1), "when an objection arises as to the relevance of discovery" it becomes the job of the court "to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it, so long as it is relevant to the subject matter of the action." In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2000 amendment). That is precisely what the

district court did here.

To the extent that Bonner argues that the requests are relevant based on subject matter, she has not provided the good cause required under Rule 26(b). For instance, RFP 6 asks that Triple-S produce all wire transfers and ACH transfers sent from Triple-S and ASI to any account in the United States, any account of the United States Treasury, or any account in Costa Rica for the relevant period. Bonner argues that her claims involve the same subject matter as the requested materials--that is, wire transfers--but she offers no explanation, and thus no "good cause," for seeking information about such a broad swath of transactions.

Bonner also faults Triple-S for not producing the records it reviewed to certify that there is no reference to Bonner at Triple-S or ASI. But to require Triple-S to produce the documents it identified as unrelated to Bonner's claims in order to prove the negative to her satisfaction would upend Rule 26(b).

Accordingly, Bonner has not shown that the district court abused its discretion in denying her Motion to Compel or her Motion for Reconsideration as to Interrogatory 4 and RFPs 2 through 10 based on overbreadth, burdensomeness, and relevance.

Before the district court, Triple-S in part opposed Bonner's remaining discovery requests--Interrogatories 1, 2, and 3, and RFPs 1 and 11--on the grounds that Bonner had not met her obligations under Local Rule 26(b) and Federal Rule of Civil

Procedure 37(a)(1), which require that the moving party certify that it has made a good faith effort to resolve the discovery dispute before seeking court intervention. Finding that Bonner had not complied with the local or federal meet-and-confer rule prior to filing her motion, the district court denied without prejudice Bonner's Motion to Compel as to those five discovery requests and instructed the parties to meet and confer within ten days to resolve the dispute. Bonner did not file another motion to compel either after the mandated meet and confer or once the ten days had elapsed.

Given that Bonner did not dispute Triple-S's assertion that she failed to meet her obligations under Local Rule 26(b) and Federal Rule of Civil Procedure 37(a)(1) for Interrogatories 1, 2, and 3, and RFPs 1 and 11, the district court did not abuse its discretion in denying without prejudice Bonner's Motion to Compel as to those interrogatories and RFPs.[5]

B. <u>Motion for Summary Judgment</u>

"When reviewing a grant of summary judgment, we often first consider challenges to the district court's evidentiary

---

[5] Likewise, while Bonner's Motion for Reconsideration contends that at the June 4, 2021 meet and confer she "discussed the lack of documents produced," it too fails to assert that she discussed her specific objections to Triple-S's responses to Interrogatories 1, 2, and 3, and RFPs 1 and 11. Accordingly, the district court also did not abuse its discretion in denying her motion for reconsideration as to those requests.

rulings, as such rulings define the record on which the summary judgment rests." Livick v. Gillette Co., 524 F.3d 24, 28 (1st Cir. 2008). The district court's evidentiary rulings are reviewed for abuse of discretion. See Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998) (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141 (1997)). "Under that standard, we will not disturb the district court's ruling unless the record demonstrates an error of law or a serious lapse of judgment on the part of the court." Livick, 524 F.3d at 28. "Once we determine what evidence can properly be considered, we review the district court's decision to grant summary judgment de novo." Vazquez, 134 F.3d at 33.

Bonner contends that the affidavits submitted by Triple-S in support of its motion for summary judgment do not meet the requirements of Federal Rule of Civil Procedure 56(c)(4) and that the district court improperly discredited her factual evidence.

a. Triple-S's Affidavits

Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[T]he requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise." Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001).

"As we've explained before, district courts must apply Rule 56(c)(4) 'to each segment of an affidavit, not to the affidavit as a whole,' and approach the declaration with 'a scalpel, not a butcher's knife,' disregarding only those portions that are inadmissible and crediting the remaining statements." Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 170 (1st Cir. 2022) (quoting Perez, 247 F.3d at 315).

Consistent with this instruction, the district court recognized that "Bonner does correctly point out that some of the purported facts advanced by Triple-S are presented in a wholly conclusory [manner] or are not fully supported by the evidence on hand" and then "excised" those supposed facts.[6]

Reviewing the affidavits at issue, we conclude that the district court did not abuse its discretion in crediting portions of the affidavits that were properly based on the affiants' personal knowledge. For instance, Iraida T. Ojeda-Castro, Vice President of Human Resources with TSM, swore under oath that she had reviewed the employment records from Triple-S and ASI and that

---

[6] To the extent that Bonner now complains about portions of the affidavits that the district court did not rely on, we see no need to reach the issue as its resolution has no bearing on the outcome here or below. As we explain infra, if admissible, the affidavits of Ojeda-Castro and Ruiz-Comas along with Gilberto R. Negrón-Rivera's December 2015 affidavit provide a sufficient basis to grant summary judgment to Triple-S. As such, we focus our discussion on these three affidavits and see no reason to pass on the admissibility of the other affidavits submitted with Triple-S's motion for summary judgment.

- 15 -

there was no record of Cerra, Zelaya, Gamboa, Ramos de Chang, Aponte, or the other individuals identified by Bonner as having ever worked at TSM.

Bonner contends that to accept Ojeda-Castro's attestation as to the employment records would be inconsistent with our reasoning in Hernández-Santiago v. Ecolab, Inc., 397 F.3d 30 (1st Cir. 2005). That case, however, concerned an affidavit that was not based on personal knowledge but instead attested only that a review of the relevant records had taken place, albeit not by the affiant. Id. at 35. This is not the case here where Ojeda-Castro, the affiant, had personally reviewed the employment records. Bonner's contention that Ojeda-Castro does not sufficiently describe the documents she reviewed is unpersuasive where Ojeda-Castro attested that she "reviewed the employment records" for TSM, its subsidiaries, and ASI, and there is "no record or indication" that such individuals "ever" worked there.

Ojeda-Castro further attested that the position identified in Gamboa's initial emails, "Head of Legal, Country Director," does not exist at TSM, ASI, or any of their subsidiaries. According to the affidavit of Gilberto R. Negrón-Rivera, an attorney with TSM, as of April 2015, the Vice President of Finance and CFO for TSM was Amílcar L. Jordán-Pérez, not Zelaya, and in May 2015, TSM's Chairman of the Board was Luis A. Clavell-Rodriguez, M.D., not Cerra.

Although an individual named Ramón M. Ruiz-Comas served as President and Chief Executive Officer of TSM from May 2002 until December 2015, Ruiz-Comas stated under oath that he has never met, spoken, emailed, or corresponded in any way with Bonner or instructed anyone else to prepare documents or make transfers for her, nor had he ever met, spoken, or communicated with anyone named "Feliciano Zelaya," or instructed anyone by that name or anyone else to prepare a certificate of investment for Bonner. Ruiz-Comas also swore under oath that the email address used by the individual who introduced himself to Bonner as Ramon Ruiz was not Ruiz-Comas's email address at that time and included a domain name that was not used by TSM.[7] Ruiz-Comas also attested that the "Ramon Ruiz" signature in the evidence put forth by Bonner is not

---

[7] Bonner asserts that the district court improperly treated a 2015 World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center proceeding as preclusive. In that proceeding, TSM filed a complaint against the owner of the domain name used by the individuals who communicated with Bonner, and an arbitrator ordered that the disputed domain name be transferred to TSM. The district court, however, did not rely upon that proceeding or the arbitrator's findings to resolve a factual dispute in this case, but merely took judicial notice of that proceeding, which is permissible. See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."). Bonner remained free to create a factual dispute by submitting evidence to suggest that Triple-S had control of the domain name before the arbitration proceeding. The issue for Bonner is not that the arbitration decision was given preclusive effect, but rather her lack of admissible evidence to rebut Triple-S's showing that it did not have control over the domain name during the relevant time period.

- 17 -

actually his handwriting and that it is his "habit and practice" to sign his full last name, "Ruiz-Comas," and not simply "Ruiz."

Finally, Ruiz-Comas attested that TSM does not invest funds on behalf of individuals and did not have a corporate account or corporate credit with the bank used by the individual identifying himself as Ruiz. See Jefferson Constr. Co. v. United States ex rel. Bacon, 283 F.2d 265, 267 (1st Cir. 1960) ("We might be prepared to say that the affidavit of a president of a corporation that the books and records of the company show certain facts to be so satisfies [the admissibility and personal-knowledge] requirements.").

Bonner quotes Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473 (1962), for the proposition that "[t]rial by affidavit is no substitute for trial by jury." However, Poller involved a "complex antitrust litigation where motive and intent play leading roles," and the Court in that case could not say on that record that "it is quite clear what the truth is" as there was "no conclusive evidence supporting the respondents' theory." Id. at 472-73. Such is not the case here, where the affidavits establish that the individuals Bonner spoke with did not work at Triple-S, that no one from Triple-S spoke with Bonner and, finally, that Triple-S did not have a contract with or do business with Bonner.

We thus conclude that the district court did not abuse

- 18 -

its discretion in parsing the affidavits and accepting those statements in the affidavits that were based on personal knowledge.

b. Bonner's Evidence

Bonner further contends that the district court improperly discounted her factual evidence, including transcribed phone conversations and email correspondence with appended documents, put forth by her to rebut Triple-S's affiants' statements and establish that she spoke with Triple-S employees.

Relying on Greenburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932 (1st Cir. 1987), Bonner argues that the district court improperly weighed the parties' evidence rather than resolving all conflicts in her favor. But Bonner's reliance on Greenburg is misplaced. In Greenburg, we affirmed the uncontroversial rule that at summary judgment there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the carapace of the cold record." Id. at 936.

The question here, however, is not whether the district court weighed evidence, but rather whether it improperly failed to consider Bonner's evidence. "Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Vazquez, 134 F.3d at 33 (citing Fed. R. Civ.

P. 56(e) and FDIC v. Roldan Fonseca, 795 F.2d 1102, 1110 (1st Cir. 1986)).  Federal Rule of Evidence 801(c) defines "hearsay" as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).

As proof that the individuals Bonner communicated with were employed at Triple-S, Bonner proffered emails, including those sent to her by the individuals who identified themselves as Zelaya, Ruiz, and Gamboa, as well as transcribed conversations between Bonner and various individuals who identified themselves as Triple-S employees.  Such evidence constitutes hearsay and would therefore only be admissible under an exception to the hearsay rule.[8]

Under the Federal Rules of Evidence, admissions by a party-opponent are not hearsay.  See Fed. R. Evid. 801(d)(2).  "For a statement to be an admission under Rule 801(d)(2), the statement must be made by a party, or by a party's agent or servant within the scope of the agency or employment."  Vazquez, 134 F.3d at 34. Bonner, however, did not properly authenticate the statements

_____

    [8]    The case Bonner cites--United States v. Doyon, 194 F.3d 207, 212 (1st Cir. 1999)--to assert that the court improperly considered the admissibility of the transcribed conversations is inapposite where Doyon considered whether the recording device was in proper working order and not whether the statements made in the conversation were true.

- 20 -

under the Rules of Evidence or establish that any of the statements were made or adopted by actual Triple-S employees or associates. Indeed, the district court detailed several ways by which Bonner could have, but did not, authenticate the statements, including by providing evidence that the calls were made to the number assigned to a particular person or business or by authenticating Ruiz's voice. Despite this guidance, Bonner failed to credibly cite an applicable exception to the hearsay rule that would have made the transcriptions, emails, and other documents at issue admissible.

Thus, we conclude that the district court did not abuse its discretion in determining that a majority of the evidence offered by Bonner was inadmissible hearsay and therefore could not be relied upon to establish a material factual dispute.

c. Summary Judgment

"A court may grant summary judgment only if the record, construed in the light most amiable to the nonmovant, presents no 'genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'" Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018) (first quoting McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017) and then citing Fed. R. Civ. P. 56(a)). "A fact is 'material' if it 'has the capacity to change the outcome of the [factfinder's] determination.'" Id. (alteration in original) (quoting Perez v. Lorraine Enters., 769 F.3d 23, 29 (1st Cir. 2014)). "An issue is

'genuine' if the evidence would enable a reasonable factfinder to decide the issue in favor of either party."  Id. (citing Perez, 769 F.3d at 29).

Bonner mistakenly asserts that there is a material factual dispute because "Triple-S says it is not Triple-S employees" behind the fraud and "Bonner says, yes it is."  As discussed in detail above, Triple-S provided affidavits, based on personal knowledge, that supported its position that neither Triple-S nor its employees were involved in a scheme to defraud Bonner.  On the other hand, Bonner did not provide admissible evidence in support of her allegation that actual Triple-S employees were the perpetrators.

We sympathize with Bonner, but her belief that Triple-S and its employees received her wires or are holding money that is rightfully hers, without more, does not create a material factual dispute sufficient to defeat summary judgment.  "Although we draw all reasonable inferences in the nonmovant's favor, we will not 'draw unreasonable inferences or credit bald assertions . . . .'" López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 28 (1st Cir. 2023) (quoting Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007)).  Accordingly, on the record before us, we detect no genuine dispute of material fact, and the district court

therefore properly granted summary judgment in favor of Triple-S.[9]

### III. Conclusion

For the reasons given, we conclude that the district court did not abuse its discretion in denying Bonner's Motion to Compel and Motion for Reconsideration. And, as noted above, the court did not err in granting summary judgment for appellees.

Affirmed.

---

[9] Triple-S's request that we sanction Bonner under Rule 38 of the Federal Rules of Appellate Procedure is denied without prejudice. Rule 38 requires that a party make such a request in a separately filed motion. Fed. R. App. P. 38; see also Prouty v. Thippanna, No. 21-1724, 2022 WL 19037643, at *1 (1st Cir. Dec. 15, 2022).