# United States Court of Appeals
## For the First Circuit

No. 24-1805

LUIS ADRIÁN CORTÉS-RAMOS,

Plaintiff, Appellant,

v.

ENRIQUE MARTIN-MORALES, a/k/a Ricky Martin,

Defendant, Appellee,

JOHN DOE; RICHARD ROE, and their respective insurance companies,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia L. Carreño-Coll, U.S. District Judge]

---

Before

Barron, Chief Judge,
Thompson and Aframe, Circuit Judges.

---

Juan R. Rodríguez López, with whom Rodriguez López Law Offices, P.S.C. was on brief, for appellant.
Benjamin S. Akley, with whom Maria E. Martinez-Casado, Maria D. Trelles-Hernandez, Pietrantoni Mendez & Alvarez LLC, David C. Rose, and Pryor Cashman LLP were on brief, for appellee.

---

June 12, 2026

**THOMPSON**, **Circuit Judge**.  Today, we consider another chapter in the perpetual quest of plaintiff/appellant Luis Adrián Cortés-Ramos ("Cortés" to save keystrokes) for good ol' fashioned copyright justice.  He's again sued defendant/appellee Enrique Martin-Morales, whom our readers more likely know as Ricky Martin, the famous Puerto Rican singer.  (We'll just call him "Martin.") And (as suggested by our use of "another chapter," "perpetual quest," and "again") this isn't the first time Cortés has ended up before us in his David-versus-Goliath copyright battle -- in fact, it's his fifth appeal in twelve years across three cases arising from the same core facts.[1]  So we'll assume the reader's familiarity with Cortés's past endeavors as our able colleagues have elsewhere described them -- all available in the stacks of the Federal Reporter, Third Series -- and pick up where they left off.

A long while after we last revived a previous rendition of this case (a version later dismissed without prejudice, after which Cortés refiled), a magistrate judge recommended granting summary judgment to Martin.  Over Cortés's manifold objections,

_____

[1] The two more recent appeals involved Cortés's cases against Martin.  See Cortés-Ramos v. Martin-Morales, 956 F.3d 36 (1st Cir. 2020); Cortés-Ramos v. Martin-Morales, 894 F.3d 55 (1st Cir. 2018). The prior two appeals arose out of the same facts, but there, Cortés was litigating not only against Martin but also Sony Corporation.  See Cortés-Ramos v. Sony Corp. of Am., 889 F.3d 24 (1st Cir. 2018); Cortés-Ramos v. Sony Corp. of Am., 836 F.3d 128 (1st Cir. 2016).

the district court adopted that recommendation in full and then invalidated Cortés's copyright registration certificate.

Yet it took those sweeping actions without giving Cortés the benefit of a chance to pursue discovery, despite his repeated pleas for such an opportunity.  Cortés appeals on that ground (as well as some others), and we agree with him on the discovery issue, so we vacate and remand for more litigation, yet again.  Read on to see why.

**HOW WE GOT HERE (FOR A FIFTH TIME)**

We'll groove past the core story of the case and skip right into more recent developments (and there are plenty).[2]  But

_____

[2] For the curious, here's the capsule form of the facts (taken from another Cortés appeal):

> In 2013, [Sony] co-sponsored the "SuperSong" contest [with Martin].  The contest invited entrants to compose, record, and submit an original musical composition and accompanying music video.  According to the contest's rules, the winning composition would potentially be included on the 2014 Fédération Internationale de Football Association ("FIFA") World Cup Official Album.

> On January 2nd, 2014, Cortés-Ramos entered the contest by uploading a song and accompanying music video to the contest's website prior to the submission deadline of January 6, 2014. On January 8, 2014, Cortés-Ramos was notified by email that he was selected as one of twenty finalists, and, on January 15, 2014, Cortés-Ramos received an email from a representative of one of the contest co-sponsors that requested that, in connection with his entry in the contest, he sign several documents and return the documents to Sony.

- 3 -

because (as the reader will later see) Cortés's arguments often focus on procedural history, we beg the reader's patience as we slow down the music and waltz gently through everything that's led us here.

## A. Since Last Time

Our last decision (issued more than five years ago) considered the previous district court's dismissal of several of Cortés's claims at the motion-to-dismiss stage. See Cortés-Ramos v. Martín-Morales, 956 F.3d 36, 39 (1st Cir. 2020). Though we affirmed dismissal of Cortés's state-law claims, we partially vacated the district court's order and remanded on one issue. Id. at 45. We wanted "to allow the district court to consider whether to dismiss the [federal] copyright claim without prejudice or to allow [Cortés] to supplement his complaint under Rule 15(d) to allege registration," an essential element of that claim. Id. at 45.

---

Cortés-Ramos signed the documents before a notary public and returned them.

On February 10, 2014, a different entrant was announced as the winner of the contest. On or about April 22, Martin released a song and music video entitled "Vida" [which Cortés alleges] . . . is similar to the music video that he had submitted as an entrant in the contest.

Cortés-Ramos, 894 F.3d at 56-57.

- 4 -

Since then, the parties have been busy. Cortés moved several times to amend his complaint -- which, again, alleged a federal claim of copyright infringement -- to include new details of his recent copyright registration. Martin opposed, arguing (among other things) that amendments would be futile because the papers that Cortés signed when he entered the SuperSong Contest conclusively ended the case in Martin's favor; alternatively, Martin said that the district court for the District of Puerto Rico had no personal jurisdiction over him.

After considering the parties' arguments, the district court entered an order dismissing the remaining copyright claim without prejudice -- i.e., in a manner that would allow Cortés to refile a complaint stating the proper elements. Why? It's a bit complicated. In 2019 (during the lifespan of the previous case), the Supreme Court held that the Copyright Act of 1976 "bars a copyright owner from suing for infringement until registration has been made." Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC, 586 U.S. 296, 302 (2019) (cleaned up). But the effective date of Cortés's Certificate of Registration was March 1, 2017 -- "almost a year after the Complaint in the instant case was filed" (the district court's words, our emphasis). Because the district court interpreted Fourth Estate to require that a registration be approved before a plaintiff filed suit, it held that permitting Cortés's amendment to his complaint "would

- 5 -

validate the filing of a suit in violation of the requirements set [out] in Section 411(a)." Dismissing without prejudice (thereby allowing Cortés to refile after the registration had happened) would cure that defect, so that's what the district court did.

Cortés then filed his third lawsuit thus far (that's today's case). He (again) alleged that Martin infringed on his federal copyright by producing, distributing, and displaying what Cortés sees as a substantially similar song and video. Along with that, Cortés alleged that he was fraudulently induced into entering the contest. And he now included details about the registration, too.

After answering and adding two counterclaims seeking to invalidate the registration (more on those later), Martin moved for a judgment on the pleadings. He argued that the documents incorporated by the complaint (and attached to his answer) showed that Cortés had assigned any and all rights he had in the video to Sony.

Following more briefing and a motion hearing, the district court dismissed the fraudulent inducement claim (because Cortés failed to properly state a claim) but kept the copyright claim alive. On that copyright claim, the court reasoned that Martin hadn't properly developed an argument under "federal copyright and Puerto Rico caselaw" that Cortés assigned his copyright to Sony; without more, "the factual allegations, taken

as true," gave the district court "pause," so it didn't think dismissal of the copyright claim on Rule 12 grounds was appropriate. More specifically, the district court was held up with Cortés's "statement that he never received a copy of the rules," and, without receipt, the district court was "reluctant to treat the affidavit" that Cortés signed when he became a top twenty finalist "as a memorandum of the transfer" for copyright purposes.[3]

Martin timely moved to reconsider, advancing arguments about how Cortés assented to the Contest Rules by entering the Contest under a "clickwrap" theory (as well as another argument that doesn't come up later).[4] While that motion sat pending, Cortés separately moved for an initial scheduling conference to kickstart discovery (a request that Martin opposed).

The court denied Martin's motion to reconsider. Relevant for our purposes, it thought the clickwrap theory wasn't

---

[3] More on the above-referenced affidavit: on January 15, 2014, Cortés submitted two sworn affidavits (confirmed by notaries) to Sony. In the first, he authorized Sony (as co-sponsor of the Contest, as laid out in the Contest Rules) to use his materials as well as those "created by Co-Sponsors and featuring [his] likeness in connection with [his] status as entrant . . . ." In the second, he signed off on the statement that he "affirm[ed] and represent[ed] that [he] [has] complied with the Official Rules of the Contest, a copy of which is attached . . . ." But Cortés had said that the Contest Rules weren't attached and he hadn't seen them, thus the district court's hesitation.

[4] A "clickwrap" agreement "refers to the assent process by which a user must click 'I agree,' but not necessarily view the contract to which she is assenting." Cullinane v. Uber Techs., Inc., 893 F.3d 53, 61 n.10 (1st Cir. 2018) (cleaned up).

properly raised before the motion to reconsider, so it needn't evaluate it. But, notably, it stated as follows at the end of its order: "To avoid discovery and unnecessary litigation, the Court will consider the aforementioned issues," i.e., the clickwrap argument (as well as one other) "under the summary judgment standard" (emphasis ours). It continued: "The Parties may file motions for summary judgment by September 29, 2023.[5] The Court expects comprehensive, well-developed legal positions and will disregard underdeveloped arguments or further briefing on the Parties' litigation history." The same day, the district court denied (in a text order) Cortés's motion for an initial scheduling conference without explanation.

Cortés rapidly (as in, on the same day) moved for reconsideration of the district court's denial of the initial scheduling conference. He highlighted how initial disclosures hadn't happened yet and that Martin controlled all the evidence, so Cortés couldn't get any documents. But the district court, in another text order, quickly denied that motion, too. The order stated that the court had "considered the arguments presented and [saw] no reason to disturb its prior ruling," so the summary judgment deadline (about a month later) would stand.

---

[5] September 29, 2023, was a month and a day after the district court issued the above-described order.

The parties then filed their summary judgment papers: Martin seeking it, Cortés opposing it.

## B. The Magistrate Judge's Take

Next, the district judge referred Martin's summary judgment motion to the magistrate judge, who then issued a report and recommendation (or "R&R") on it. We'll only walk through the R&R as necessary for today's decision.

To start, the magistrate judge laid out thirty-two numbered undisputed facts about the SuperSong Contest, its rules, Cortés's selection by Sony, his acceptance of the Contest's terms, and Cortés's later registration of the copyright for his song. (These largely track what we put in Footnote 2.)

After that, the magistrate judge laid out several legal holdings. It began by holding, over Cortés's two-fold protestations, that the summary judgment motion could be decided. While Cortés first lamented that summary judgment was premature "because no discovery has been conducted, not even initial disclosures," the magistrate judge noted that the parties "had a mutual obligation under [Rule] 26(a)(1)(A) to provide to the other initial disclosures 'without awaiting a discovery request.'" Cortés's cries rung hollow, thought the magistrate judge, because Cortés hadn't "alleged that he fulfilled his duty under Rule 26 even three years after he filed the case."

Cortés's second gripe with the timing of summary judgment, explained the magistrate judge, was that it was "arbitrary," an argument that was disposed of quickly. Remember, after the district court denied Martin's motion to reconsider its past order (the one partially denying Martin's initial motion to dismiss), it set a deadline of just over one month later for the parties to file motions for summary judgment. The magistrate judge thought this decision was reasonable given caselaw about the district court's broad discretionary powers to manage cases, as well as the flexibility built into Rule 56. So, in the magistrate judge's eyes, the district court's decision to move straight to summary judgment "[t]o avoid discovery and unnecessary litigation" (to remind, the district court's words from above) was fine.

After that, the magistrate judge rejected Cortés's argument that it and the district court lacked "jurisdiction to make any rulings regarding the Contest Documents, including the Contest Rules, because" (at least in Cortés's eyes) "that analysis is reserved for the arbitration proceedings" that he planned to pursue against Sony. That argument easily failed (in the magistrate judge's view) both because of First Circuit caselaw explaining that "[a]n agreement to arbitrate does not divest a court of its jurisdiction," Skirchak v. Dynamics Rsch. Corp., 508 F.3d 49, 56 (1st Cir. 2007) (cleaned up), and because the district

- 10 -

court had (in its opinion on Martin's judgment on the pleadings motion) already heard and rejected the argument.

Those threshold issues aside, the magistrate judge dug into the merits of the case. The central merits issue before it -- based on the district court's decision to narrow the field -- was whether Cortés "in fact assigned his copyright" to Sony "by consenting to the Contest Rules." The magistrate judge reasoned that the Contest Rules' "broad, all-encompassing language" supported Martin's argument that Cortés "unequivocally assigned to Sony all copyrights over the Submission Materials." Given that Cortés had "not presented uncontested material facts to refute the plain language of the Contest Rules' assignment provision," the magistrate judge thought Martin had the better of this argument.

Yet the fact that the Contest Rules set up an assignment did not end the analysis. The magistrate judge next examined whether Cortés assented to the Contest Rules -- the point being that it didn't matter if the Contest Rules required an assignment if Cortés never consented to them in the first place. After walking through the record, the magistrate judge found that Cortés had accepted the Contest Rules and thus held that Martin "has put forth uncontested material facts showing that [Cortés] assigned his copyrights to Sony," and "[b]ecause ownership of a valid copyright is a requirement of a copyright infringement action,"

Cortés could not "prevail as a matter of law."  It thus recommended granting Martin's motion for summary judgment.

### C. Cortés's Objections to the R&R

Cortés then timely filed his objections to the R&R, and he made several.  We'll detail them only to the extent they track Cortés's arguments that we consider today.[6]

For one, Cortés argued that the magistrate judge erred in ruling that the discovery process (or more precisely, the lack thereof) was all aboveboard.  Cortés highlighted how the magistrate judge said that he "claims no such discovery occurred but has not alleged that he fulfilled his duty under Rule 26 even three years after he filed the case."  But Cortés lamented it was "incorrect" that the "discovery phase can be initiated voluntarily by the parties, cannot be forced by a party upon another party (Martin) and cannot be conducted against another source (non-party Sony)," based on Rule 26(d)(1).  And that rule states that a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).  Cortés then highlighted a few times where he sought discovery and was denied by the district court.

---

[6] We'll also pass on summarizing Martin's responses for now.

- 12 -

And Cortés thought that discovery should be allowed because "all evidence is in the control" of Martin and his co-defendants.

Second, Cortés challenged (we think, at least based on the header in the brief) the magistrate judge's refutation of his jurisdictional argument. After quoting the part of the R&R describing how the district court found in Cortés's "favor on the issue of whether the agreement was a work for hire and leaving his copyright claim intact," Cortés simply explained that "[t]he analysis is incorrect and then the subsequent conclusion is incorrect."

Afterward, Cortés objected to the magistrate judge's determination that the Contest Rules "contained an assignment of copyrights." Similarly, he insisted that he did not consent to the Contest Rules by any of the mechanisms the magistrate judge identified -- registering for the SuperSong Contest, sending the email, or submitting the affidavit. (He made this argument mainly by citing his response to Martin's motion for summary judgment, without providing much further detail.) And finally, Cortés disputed the magistrate judge's determination that there was "no genuine factual dispute that Plaintiff consented to the Contest Rules." That concluded his list of grievances.[7]

---

[7] We move quickly through these arguments because we don't reach their merits today. We also here note that Cortés separately took aim at a footnote in the R&R where the magistrate judge stated: "Surprisingly, neither party has submitted a copy of the

## D. The District Court's Order Adopting the R&R

After reviewing Cortés's objections and Martin's responses, the district court adopted the R&R in full.

### i

Relevant here, the district court explained why Cortés's gripes about discovery were meritless. It offered four reasons.

First, the district court said that Cortés misunderstood rules about discovery. As the district court put it, "Federal Rule[s] of Civil Procedure 26(a) and (f) instruct" parties "to confer and make initial disclosures at a case's outset." Cortés didn't allege that he invited Martin to confer, or that Martin rejected such an invitation; he also didn't allege that he made his own required initial disclosures. From that, the district court reasoned that it was "not obligated to devote scarce judicial resources to routine exercises the parties never attempt, let alone fail, to conduct alone."

Second, the district court didn't make much of the fact that Sony (as a third-party) held the records. In the district court's words, it was "unclear why that fact hindered [Cortés's] ability to discover documents," given that attorneys "have

---

copyrighted video and the allegedly infringing video." To refute that point, Cortés cited former iterations of this case where the magistrate judge could have found them, as well as the defendants' motion for summary judgment and more submissions from previous iterations. But that did not bear on the decision, so we won't linger on it further.

- 14 -

subpoena power in civil cases" under Rule 45(a)(3). This wasn't a case where Sony defied a subpoena or Cortés moved to compel, so this point about Sony's control over the documents wasn't a winner for Cortés.

Third, even without the discovery that Cortés so desperately now called for, the district court thought he didn't try to halt the proceedings after Martin filed for summary judgment. The district court thought he might have been within his rights to do so under Rule 56(d), because (as we put it) that rule "provides a safety valve for claimants genuinely in need of further time to marshal facts essential to justify their opposition to a summary judgment motion." Emigrant Residential LLC v. Pinti, 37 F.4th 717, 724 (1st Cir. 2022) (cleaned up). But on the chance Cortés thought his opposition to the summary judgment motion "could be construed as a Rule 56(d) motion," the district court said otherwise. Rule 56(d) motions have specific requirements (as detailed by our caselaw) but Cortés's opposition, in contrast, "merely assert[ed] that no discovery was conducted." So the district court saw no error in the magistrate judge's decision to consider the summary judgment motion even absent discovery.

Fourth, the district court set aside all of that insofar as (in its eyes) there was, at this point in the litigation, "but one material, threshold issue: whether the Contest Rules and other exchanges between [Cortés] and Sony, taken as a whole, constitute

- 15 -

a contract that precludes [Cortés's] copyright infringement claim against Martin," what it saw as a "strictly legal issue." The Contest Rules (and other relevant papers) were in the record and Cortés "previously stipulated to the authenticity of those documents," but, meanwhile, Cortés had "never informed the Court that any other relevant exchange between him and Sony or Martin occurred." So no more needed to be said.

## ii

Next, the district court took a quick foray into Cortés's jurisdictional argument. Describing it as "vaguely allege[d]" and "murky," the district court construed it as either "an objection to this Court's subject matter jurisdiction or an argument that some abstention doctrine applie[d]."

But neither objection carried the day in the district court's view. That Cortés had an arbitration agreement with Sony was irrelevant to its dispute with Martin, it thought, so no "jurisdictional defect lies." As for any "prudential reason to abstain from adjudicating this case," the district court couldn't discern one. After all, Cortés "not only properly invoked [the district court's] jurisdiction" by suing in the first place, but then "embraced it when favorable to him." Nor had Cortés "actually commenced arbitration against Sony," so that couldn't give the district court any pause. Instead, the district court wrote: "Only now -- at the eleventh hour, without citation or argument -- does

[Cortés] argue [the district court] cannot (or should not) perform the contract inquiry key to his claims," even though his copyright claim is "apparently not pending adjudication before any other tribunal or arbitral body." Calling the jurisdictional argument "bafflingly contradictory," the district court boiled it down to Cortés "just" not wanting the court "to touch" what looked like a losing issue. The district court thus saw no error in the magistrate judge's approach from a jurisdictional perspective.

**iii**

After that, the district court considered and rejected Cortés's argument that the magistrate judge erred in determining that Cortés assigned his rights to Sony.

Next, the district court considered (and again quickly dispensed with) Cortés's objection that he didn't assent to the Contest Rules by registering for the SuperSong Contest, submitting the video, or submitting the later affidavit.

Finally, the district court looked at Cortés's argument that consent was a factual question involving credibility determinations better left for the jury. That one wasn't a winner in the district court's view because Cortés failed to show "any conflicting evidence that he believes was inadequately weighed" and failed to "point to credibility determinations in the R&R." No more needed to be said.

Having stood up and then knocked down the arguments Cortés levied against the R&R, the district court adopted it in full and thus granted Martin's motion for summary judgment.

But that wasn't all, because "one loose end" was left: Martin's counterclaims seeking to invalidate Cortés's copyright registration. The district court, considering its adoption of the R&R, found the counterclaims moot "in all respects except for Martin's request that the Court deem [Cortés's] copyright registration invalid." Because it had determined that Cortés assigned any rights that he possessed in the submission materials to Sony, the district court held that Cortés "had no rights to register with the Copyright Office in 2017," so it declared Cortés's Certificate of Registration invalid.

Cortés timely appealed, so we now step onto the stage for our performance.

## OUR BEAT (STANDARD OF REVIEW)

"We review an order granting summary judgment de novo." Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). The standard is a familiar one: a court can grant summary judgment "only if the record, construed in the light most amiable to the nonmovant, presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law." Id. (cleaned up); see Fed. R. Civ. P. 56(a).

**OUR VERSE (DISCUSSION)**

On appeal, Cortés repeats much of the song he sang below. We start with jurisdiction, move to discovery, and -- finding reversible error there -- then stop the music.

### A. Jurisdiction and Arbitration

To start, we consider Cortés's jurisdictional argument.[8] His main point, as we read it, is that any controversy between him and Sony "had to be adjudicated by an arbiter" under the Federal Arbitration Act, so the district court lacked jurisdiction to hear this case between Cortés and Martin, too, because it was related to the Contest Rules.[9]

Martin retorts that Cortés has pursued his claim in federal court for years at this point. Quoting the district court, Martin says that Cortés "can't have it both ways, accepting the Court's analysis of contest documents when favorable to him and seeking to block analysis of those same documents when unfavorable to him." In other words, Martin sees it as inconceivable that

---

[8] We start here because this is (as we understand it) a jurisdictional dispute, but we note that this argument was the third in his appellate brief.

[9] Cortés also includes some caselaw about the role of federal courts in vacating arbitration awards (among other things). But given that he hasn't pursued arbitration and there's no award, we "can make neither heads nor tails of these citations, which have no clear relevance and which are completely devoid of context or developed argument." FTC v. Direct Mktg. Concepts, Inc., 624 F.3d 1, 8 (1st Cir. 2010). So Cortés has "waived any argument [he] might have raised under those sources, if any exists." Id.

- 19 -

Cortés could first bring a claim that necessarily turns on an interpretation of the Contest Rules but then, once the case started to shake out against Cortés, basically end the litigation on jurisdictional grounds before reaching a key merits issue.

We think Cortés's arbitration argument could be read a few ways, but our precedent forecloses it no matter how it's sliced. If Cortés is saying that the district court lacked jurisdiction just because an arbitration agreement exists in the Contest Rules, we've said exactly the opposite before: "[a]n agreement to arbitrate does not divest a court of its jurisdiction." Skirchak, 508 F.3d at 56 (cleaned up); see also DiMercurio v. Sphere Drake Ins., PLC, 202 F.3d 71, 77 (1st Cir. 2000) (noting the "modern view that arbitration agreements do not divest courts of jurisdiction, though they prevent courts from resolving the merits of arbitrable disputes"). Cortés gives us no reason to revisit those holdings, so we won't tarry on the point.

And if Cortés is instead arguing that the arbitration agreement between him and Sony also required the district court to stop judicial proceedings and compel arbitration between him and Martin, we don't see why. A necessary condition of compelling arbitration is "that the other party is bound by" the arbitration clause, and we don't see that here. InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003). Cortés concedes that the agreement was solely between him "and a third party (Sony)," and he does not

- 20 -

otherwise explain why Martin is "bound by" the arbitration clause. See Cortés-Ramos v. Martin-Morales, 894 F.3d 55, 60 (1st Cir. 2018) (explaining that "Martin was not an intended third-party beneficiary of the parties' agreement to arbitrate").

And if (as a third possibility) Cortés is instead arguing that there's any other reason to abstain because of the arbitration agreement, we echo the district court's reasoning. We see no "prudential reason to abstain from adjudicating this case" even though Cortés has the option to pursue arbitration against Sony, and Cortés doesn't identify one. After all, Cortés (as the district court put it) "not only properly invoked [the district court's] jurisdiction" by suing there in the first place, but then "embraced it when favorable to him." And Cortés still has not, as far as we know, commenced arbitration against Sony.

Yet we do note the relationship between this litigation and any possible future arbitration: it's "well-settled that issue preclusion may apply to arbitration proceedings." O'Connell v. Fed. Ins. Co., 484 F. Supp. 2d 223, 226 (D. Mass. 2007). And while that normally means that an arbitration result can bind a court if the strictures of issue preclusion are satisfied, see id., it's possible that past judicial decisions would also bind future

arbitrations, given that they legally bind the parties.[10]  (Why that consideration matters will become clear later.)

But either way, we see no reversible error on jurisdictional and/or arbitration-related grounds.

## B. Discovery

Cortés next protests how discovery shook out -- or really, how it didn't.  He starts by explaining that "no discovery was conducted in the prior cases and [Martin] had control of all the evidence."  He says he requested that discovery start several times in writing and also orally at what he says is the only hearing he got.  And he then proceeds to summarize more of the procedural history that we've described above.[11]  Like Martin, we understand Cortés's grievance to be that the district court granted summary judgment even though the parties hadn't yet conducted discovery.

"When a party claims an inability to respond to an opponent's summary judgment motion because of incomplete discovery or the like," just like Cortés does here, Rule 56(d) "looms large." Resol. Tr. Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1202

---

[10] Whether that's right is a question for another day.

[11] He recounts, for instance, his motion for an initial scheduling conference, Martin's opposition, the district court's denial, his motion to reconsider the denial of the scheduling conference, the court's denial of that motion to reconsider, and its decision to carry on with summary judgment.

(1st Cir. 1994).[12]  The rule "is intended to safeguard against judges swinging the summary judgment axe too hastily."  Id.  It provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion [for summary judgment] or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

It's true (as our dissenting-in-part colleague observes) that Cortés never actually invoked Rule 56(d) by name.  But, unlike the district court, we think his motion to reconsider can be reasonably understood as an initial Rule 56(d)-style plea for relief, and, to boot, he continued to press those discovery arguments throughout the remainder of the case.  See Shelton v. Bledsoe, 775 F.3d 554, 566 (3d Cir. 2015) (explaining how "the text of the rule, Advisory Committee's notes, our own precedent, and guidance from other circuit courts all indicate that a formal motion is not required by the Rule").  In his motion for reconsideration, Cortés explained that "[t]o allow the filing of

---

[12] The careful reader will note that Resolution Trust Corp. discussed "Rule 56(f)," not Rule 56(d), but we note that before 2010, "what is now Rule 56(d) was denominated as Rule 56(f)." Emigrant Residential LLC v. Pinti, 37 F.4th 717, 724 (1st Cir. 2022).

summary judgment without any discovery is contrary to . . . Rule 56 and only benefits [Martin] who exercises control[] over all the records and the evidence." The only relevant part of Rule 56 to that statement was, in fact, subsection (d), so we'll evaluate his discovery argument with the Rule 56(d) caselaw in mind.[13] See Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc., 730 F.3d 23, 29 (1st Cir. 2013) (explaining that courts should apply the rule "liberally" (cleaned up)).

We've explained that Rule 56(d) requires that the party seeking additional discovery show "five elements: authoritativeness, timeliness, good cause, utility, and materiality." Emigrant, 37 F.4th at 725 (cleaned up). But it is indeed a flexible taxonomy, because "one or more" of those five

---

[13] We read the dissent to say Cortés couldn't have protested the lack of discovery before Martin had filed the motion for summary judgment. It's fair enough to say that the mine-run of cases involving Rule 56(d) are those involving "a party who, when confronted by a summary judgment motion" sought more time, and Cortés first raised the discovery problem before he was "confronted by a summary judgment motion." Resol. Tr. Corp., 22 F.3d at 1203. But we certainly won't fault Cortés for essentially invoking what we've called "the salutary purposes" of Rule 56(d) in his motion to reconsider, albeit preemptively, both because (1) he raised such concerns again when actually confronted with the motion and (2) it seems he well knew that a summary judgment motion from Martin was imminent anyway, based on the district court's prior order. Why fault him on those grounds when Rule 56(d) precisely "is designed to minister to the vigilant"? Id.

factors can "be relaxed, or even excused, to address the exigencies of a particular case." Id. (cleaned up).

We view our Rule 56(d) analysis (i.e., the district court's decision to deny discovery and proceed with summary judgment) with an abuse of discretion lens. Id. at 724. But even so, we have "been clear and concordant in [our] direction to district courts regarding how to analyze Rule 56(d) issues: Consistent with the salutary purposes underlying Rule 56([d]), district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter." In re PHC, Inc. S'holder Litig., 762 F.3d 138, 143 (1st Cir. 2014) (cleaned up). All that explained, we turn to the five factors.

**1. Authoritativeness**. First, "authoritativeness." It's true that Cortés didn't quite comply with Rule 56(d)'s formalities insofar as he didn't attach a separate affidavit or declaration. But under special case-specific circumstances, other circuits have relaxed the rule's formalities. See 10B Wright & Miller's Federal Practice and Procedure § 2740 (4th ed. 2016) ("[I]n certain circumstances courts have indicated that continuances would be proper even though Rule 56(d) had not been formally complied with when the court concluded that the party opposing summary judgment had been diligent and had acted in good faith." (collecting cases)); see, e.g., First Chi. Int'l v. United Exch. Co., 836 F.2d

1375, 1381 (D.C. Cir. 1988) ("[G]iven the particular circumstances of this case, we do not think the district court's summary judgment was automatically justified by FCI's failure to file a Rule 56 affidavit."); Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244-45 (4th Cir. 2002) ("Specifically, if the nonmoving party's objections before the district court served as the functional equivalent of an affidavit and if the nonmoving party was not lax in pursuing discovery, then we may consider whether the district court granted summary judgment prematurely, even though the nonmovant did not record its concerns in the form of a Rule 56([d]) affidavit." (cleaned up)).

We believe this is one such case where that relaxed approach is both appropriate and necessary. See Emigrant, 37 F.4th at 724 (explaining that "district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter" (cleaned up)). The reasons why become clear once we turn to the "timeliness" and "good cause" analyses.

**2. Timeliness.** Indeed, Cortés deserves credit in the "timeliness" department. He was quick to act, filing the motion to reconsider (i.e., the first motion for Rule 56(d)-style relief) as soon as practicable after the district court's first denial of the initial scheduling conference (i.e., the same day). See In re PHC, Inc. S'holder Litig., 762 F.3d at 144 (finding in favor of

the plaintiffs on this element when they "promptly invoked Rule 56 shortly after defendants moved for summary judgment").

Remember, Rule 56(d) is "designed to minister to the vigilant," and we see Cortés's "due diligence both in pursuing discovery before the summary judgment initiative surface[d]," insofar as he sought to have the initial conference back in March 2023, "and in pursuing an extension of time thereafter," insofar as he filed another motion the same day his first motion for an initial scheduling conference was denied. Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 92 (1st Cir. 1996) (cleaned up); see also Rios v. Centerra Grp. LLC, 106 F.4th 101, 121 (1st Cir. 2024). That vigilance helps his cause.

**3. Good Cause.** Onto "good cause." The critical question here is whether Cortés "has had a full and fair opportunity to conduct discovery needed to mount an effective opposition to a summary judgment motion." Emigrant, 37 F.4th at 724 (cleaned up). Whether good cause for more (or really, any) discovery exists "must be viewed against the historical background of the litigation." Id. at 726. And if Cortés is able to show "that [he] has not had such an opportunity" to pursue discovery, "a strong presumption arises in favor of relief." Id. at 724 (cleaned up).

We think Cortés has shown that he hasn't had a full and fair opportunity. Remember, the prototypical Rule 56(d) case arises when the parties have had the chance to do at least some

discovery, but then the summary judgment motion comes before at least one party is satisfied with the discovery process.  See, e.g., id. at 723; Rivera-Almodóvar, 730 F.3d at 25.

This case, by contrast, involves no discovery.  For starters, Cortés timely argued that summary judgment should be postponed for discovery because (in his exact words) "[s]ince 2016 (eight years) has been of litigation; but no discovery had been conducted due to the continuous motion to dismiss filed by defendant; over six (6) [motions to dismiss] in the later case before the US District Court."  We understand his point to be that, in his past cases about the SuperSong Contest, discovery never opened in large part because he always got held up at the motion-to-dismiss stage.  That does reasonably explain why it hadn't yet been conducted previously, despite the chronicles of caselaw this endeavor's created thus far.

And in this case, the district court sped from Martin's motion for judgment on the pleadings into summary judgment motions practice specifically "[t]o avoid discovery."  Meanwhile, Martin's summary judgment motion was supported by testimony in the form of affidavits (like those of Sony's Stuart Bondell and Colleen Christi) that Cortés never got to challenge during a deposition -- let alone see before the summary judgment motion -- as well as documents he hadn't seen in a long time.  See In re PHC, Inc. S'holder Litig., 762 F.3d at 144 ("Much of the

information sought was within defendants' control, a factor which weighs heavily in favor of relief under Rule 56([d])." (cleaned up)).  We see no statement from Martin (either here or below) that he's provided <u>all</u> the relevant documents related to the case (remember, we're talking about the defendant here, and not any statement made by third-party Sony).  So both the district court and Cortés only saw what became the dispositive documents because of Martin's largesse; Martin might as well have said, "Trust me, there's nothing else to see."  Yet the formalities of discovery exist precisely so that Cortés could (to quote President Reagan) "trust, but verify" that there really wasn't anything more.  <u>See</u> <u>United States</u> v. <u>Procter & Gamble Co.</u>, 356 U.S. 677, 682 (1958) ("Modern instruments of discovery . . . make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.").

Denying Cortés that chance was error.  Two lines of cases inform our decision.  First, it's established in our caselaw that if the evidence in a case is largely or solely within the defendant's control, that factor "weighs heavily in favor of relief under" Rule 56(d).  <u>In re PHC, Inc. S'holder Litig.</u>, 762 F.3d at 144 (cleaned up).  Cortés raised this point repeatedly, and although we believe that third-party Sony (rather than Martin) held the docs, Martin was (as far as we understand) able to utilize their prior business relationship (and co-defendant status) to

marshal what he saw as the necessary paperwork to win at summary judgment. Such a circumstance, we think, still weighs in favor of relief. Cf. id. (noting co-defendant relationship); Reid v. New Hampshire, 56 F.3d 332, 342 (1st Cir. 1995) ("Given the direct police involvement in the bitter dispute between Wendy and her mother, and the two police reports relating prior sexual abuse of Misty, it cannot be considered implausible in the least that the police had access to the exculpatory information prior to Reid's arrest.").

Second, and more importantly, we've previously explained that, "typically, when the parties have no opportunity for discovery, denying the Rule 56([d]) motion and ruling on a summary judgment motion is likely to be an abuse of discretion." In re PHC, Inc. S'holder Litig., 762 F.3d at 144 (cleaned up). Plenty of our sister circuits have reached the same conclusion when the district court blew past discovery entirely. See, e.g., Shelton, 775 F.3d at 558, 568 (holding that it was an abuse of discretion to grant summary judgment where "[n]o discovery requests were filed by either party; no disclosures were provided; and no discovery occurred," despite the nonmovant's protests); Bailey v. KS Mgmt. Servs., LLC, 35 F.4th 397, 404 (5th Cir. 2022) ("Here . . . there was no discovery period at all -- Bailey had no opportunity to conduct discovery absent court approval. She promptly and repeatedly sought such approval. That her requests were repeatedly

- 30 -

denied does not reveal a lack of diligence on her part."); Vance By & Through Hammons v. United States, 90 F.3d 1145, 1149 (6th Cir. 1996) ("Most significant to the conclusion" that summary judgment was inappropriate "is the fact that no discovery was conducted before the motion for summary judgment was filed and decided."); InteliClear, LLC v. ETC Glob. Holdings, Inc., 978 F.3d 653, 663-64 (9th Cir. 2020) ("To date, no discovery has been conducted and oral argument in the district court was cancelled. On these facts, we conclude that the summary judgment granted was precipitous, premature and did not fairly permit development of the issues for resolution . . . ."). This line of cases presuming error without discovery clinches why it was problematic to deny Cortés any meaningful opportunity to get discovery.

These concerns are especially weighty (now returning to our arbitration/issue preclusion point) given that this litigation could bind Cortés in that future arbitration against Sony, too; his loss in this case (without discovery) probably means that he wouldn't even get the chance to engage in discovery over in arbitration, either, because of the district court's legal determination (on a possibly incomplete record) that he assigned his rights to Sony -- the very matter that would have to be arbitrated.

It's true that the district court offered some reasons why it thought discovery wasn't necessary. But we don't find those

reasons all that persuasive, in light of the circumstances and the caselaw we've identified. For one, the district court hung its hat on the fact that Cortés failed to provide initial disclosures. But two points lead us not to give that much weight. First, if Martin and Sony held all the facts (as Cortés so insistently claimed), what could Cortés have to disclose? And second, given that the district court said that it was specifically putting the case on the fast track "[t]o avoid discovery" and Cortés repeatedly opposed that plan to no avail, we don't see why initial disclosures would have made much a difference. Cf. Bailey, 35 F.4th at 404 ("Bailey's repeated requests for court permission to conduct discovery show anything but a lack of diligence.").

For another, the district court said that there was no reason why Cortés couldn't have subpoenaed Sony, who actually held the evidence. But again, the district court said that the case was heading towards summary judgment and that such a path was being taken "[t]o avoid discovery." So we don't see how Cortés would have gotten a reasonable window to halt the proceedings and pursue that line of inquiry anyway, especially given the district court's denial of Cortés's request that it order a scheduling conference. Cf. id. at 403 ("Before the district court held its initial conference, two obstacles stood in Bailey's way: First was Rule 26, which prohibited her from seeking discovery until after the initial conference.").

And for a third, the district court said that Cortés failed to invoke Rule 56(d) entirely. Yet it seemed to forget that, given the salutary purpose of Rule 56, the Rule should be construed "liberally." Rivera-Almodóvar, 730 F.3d at 29. We get that Cortés's briefing below was hardly a model of clarity, but it was lucid enough to convey the gist of his argument such that we're able and willing to excuse some shortcomings here under the flexible Emigrant taxonomy. See 37 F.4th at 725. That's especially true given how the procedural evolution of this matter has played itself out. His motion to reconsider followed by his continued pressing of the argument indeed shows his dogged "persistence in [his] pursuit of discovery at an early stage of the litigation." In re PHC, Inc. S'holder Litig., 762 F.3d at 144.[14]

And the problems under "good cause" of course have a cascading effect on the rest of the Rule 56(d) analysis.

**4. Utility**. While Cortés didn't do a bang-up job mapping "out . . . areas that [he] wished to explore

---

[14] Given our Rule 56(d) holding, we decline to opine much on the district court's additional point (setting aside discovery) about how there "is but one material, threshold issue." The reason the case was so narrow may well have been because Cortés hadn't been given the chance to find anything else, despite surviving a decade's worth of motions to dismiss. See Emigrant, 37 F.4th at 727 (rejecting the argument that additional discovery would be futile when discovery could "call into question the chain of custody" of important documents or "reveal circumstances" rendering past assignments "void").

through . . . discovery," it's rather obvious why he couldn't: discovery hadn't even started yet and he consistently said that he held none of the documents relevant to his case. Emigrant, 37 F.4th at 725. Because Cortés's initial plea to halt the proceedings and seek discovery came before any discovery started, we excuse this less-than-stellar showing, given these exigencies. See id. (Don't get it twisted, though: the word "because" is doing a lot of work there, and parties shouldn't get the wrong impression that, in more ordinary cases, an effort to make a persuasive showing on less than all five factors is okay if the record clearly suggests that such a showing can be made.)

**5. Materiality.** The same goes for the "materiality" analysis. "Because evaluating the potential significance of unknown facts in regard to unadjudicated issues is something of a metaphysical exercise, the threshold materiality at this stage of a case is necessarily low," so Cortés's more general pleas were to be expected. In re PHC, Inc. S'holder Litig., 762 F.3d at 145 (cleaned up). And we reiterate that this less-than-stellar showing is passable here, too, only because of the wholesale denial of discovery; Cortés's failure to present a more robust materiality showing is excusable under these particular circumstances. See Emigrant, 37 F.4th at 725 (emphasizing the flexible taxonomy).

**Synthesis.** All told, we think that Cortés didn't get a full and fair opportunity to pursue discovery. Combined with his

vigilance in trying to bring the issue to the district court's attention, that constitutes reversible error on the district court's part.  In re PHC, Inc. S'holder Litig., 762 F.3d at 144.

We know, as Martin reminds us, that "discovery is an expensive and burdensome process, and at every stage is subject to control as a matter of sound judicial judgment." E. Food Servs., Inc. v. Pontifical Cath. Univ. Servs. Ass'n, 357 F.3d 1, 9 (1st Cir. 2004).  But in the discovery process, district courts should fairly balance the interests of the parties, particularly when one party has access to/control over all the documents and the other has no more than a vague memory of what documents were exchanged many years ago.[15]  We don't think such a balancing of interests happened here.  On remand, the district court should clarify the parties' obligations for the discovery proceedings and permit Cortés to engage in discovery related to the key issues of the case.

Because, "[g]iven these additional factors due weight, and considering the record as a whole," we find error in the discovery arena, we vacate the district court's orders granting summary judgment and invalidating Cortés's copyright registration

---

[15] To be more specific, it seems that Sony (who held all the documents related to the SuperSong Contest) provided Martin whatever documentation was purportedly necessary to pursue summary judgment, while Martin (throughout these proceedings) challenged Cortés's ability to independently probe for more.

on what could well be a less-than-fair-and-complete record.  <u>Resol.</u>
<u>Tr. Corp.</u>, 22 F.3d at 1209.  Only after Cortés has had a "full and
fair opportunity" to pursue some discovery (as our caselaw
requires) should the district court proceed to summary judgment.[16]
<u>Emigrant</u>, 37 F.4th at 724.

**OUTRO**

We thus **<u>vacate</u>** the district court's grant of summary
judgment, as well as its order deeming invalid Cortés's copyright
registration, and **<u>remand</u>** for further proceedings consistent with
this opinion.  Costs to Cortés.


**- Partial Dissenting Opinion Follows -**

---

[16] We thus decline to opine on the merits of the district
court's summary judgment order.

- 36 -

**BARRON, <u>Chief Judge</u>, dissenting in part.** The majority vacates the grant of summary judgment to Enrique Martin-Morales on Luis Adrián Cortés-Ramos's remaining claims based solely on the District Court's asserted misapplication of Federal Rule of Civil Procedure 56(d). That Rule provides that a court may, among other things, "defer considering [a] motion [for summary judgment]" if "a nonmovant shows by affidavit or declaration that, for specified reasons," they "cannot present facts essential to justify [their] opposition." Fed. R. Civ. P. 56(d). Because I do not understand Cortés to have made the Rule 56(d) arguments that the majority attributes to him, I respectfully dissent in part.[17]

In his responsive filing to Martin's motion for summary judgment, Cortés argued that it would be premature to grant the motion because "[n]o discovery ha[d] been conducted[,] not even initial disclosure[s] produced." But the Magistrate Judge to whom Martin's motion for summary judgment was referred expressly rejected that argument in its Report and Recommendation ("R&R") because, "even three years after he filed the case," Cortés still had failed to comply with his "obligation under" Federal Rule of Civil Procedure 26(a)(1)(A) "to provide . . . initial disclosures 'without awaiting a discovery request.'"

---

[17] I agree with the majority that the District Court had jurisdiction over the appeal despite the arbitration clause between Cortés and Sony.

- 37 -

In his objections to the R&R that he filed with the District Court, Cortés took issue with "the Magistrate Judge's observation that [he] failed to fulfill his Rule 26[(a)(1)(A)] duty to make initial disclosures yet opposed summary judgment on grounds that no discovery or initial disclosures were exchanged." The District Court was not persuaded.

The District Court explained that Cortés failed to "highlight[]" any "legal error by the Magistrate Judge," as Cortés did not claim that the Magistrate Judge's "observation" concerning Rule 26 was "incorrect." Instead, the District Court observed that Cortés merely asserted, "without citation to any legal authority, that the parties cannot initiate discovery voluntarily." But, the District Court determined, that proposition was contradicted by Federal Rules of Civil Procedure 26(a)(1)(C) and 26(f)(1), which "command[] litigants to confer and make initial disclosures at a case's outset."

Nor, the District Court noted, did Cortés claim that he had "ever invited Martin to confer regarding discovery," "that Martin ever rejected an invitation to meet and confer," "that he made the required initial disclosures," "or that the instant proceeding [was] exempt from initial disclosures." And, the District Court added, it was not "obligated to devote scarce judicial resources to routine exercises" -- such as ordering "an

Initial Scheduling Conference" -- that "the parties never attempt[ed], let alone fail[ed], to conduct alone."

The District Court did acknowledge that Cortés "[s]eparately" objected to the R&R on the grounds that "evidence and records [were] in possession of Sony, a third party." But the District Court pointed out that Cortés did not "allege that he ever served a subpoena on Sony" or "filed a motion to compel," leaving it "unclear why [Sony's alleged possession of evidence and records] hindered [his] ability to discover documents." (Citing Fed. R. Civ. P. 45(a)(3).)

Finally, the District Court observed that, "when confronted with Martin's Motion for Summary Judgment," Cortés did not "file a Rule 56(d) motion." And, the District Court continued, even if Cortés's responsive filing to Martin's motion for summary judgment could itself "be construed as a Rule 56(d) motion," Cortés still "failed to meet the requirements" under Rule 56(d) because that filing, among other things, "fail[ed] to even vaguely describe what facts he could counter with discovery."

So, what does Cortés have to say in response to the District Court's grounds for rejecting his discovery-related objections to the R&R? As far as I can tell, only this:

> Since the case was filed, [Cortés] made clear
> that no discovery was conducted in the prior
> cases and [Martin] had control of all the
> evidence. [Cortés] reaffirmed the need for
> discovery at all processes and in the only

- 39 -

> hearing, the oral argumentation on
> July 12, 2022.

(Citations omitted.) But that response fails to address any of the District Court's pertinent reasoning. Specifically, it does not engage with the District Court's conclusions regarding Rules 26(a)(1)(C) and 26(f)(1) (which concerned the problem with Cortés objecting to the R&R based on no discovery having been conducted when he had failed to take the precursor steps spelled out in those rules despite having had years to do so), Rule 45(a)(3) (which concerned the problem with Cortés objecting to the R&R based on Sony having potentially relevant evidence when he failed to explain why he could not have subpoenaed Sony on his own), or Rule 56(d) (which concerned the problem with Cortés objecting to the R&R on Rule 56(d) grounds when he had indisputably failed to "even vaguely describe" what he sought in discovery in his only filing that could possibly be treated as a Rule 56(d) motion). Rather, Cortés simply asserts on appeal that he desired to conduct discovery, that he told the District Court of his desire to conduct discovery, and that discovery ultimately was not conducted. He therefore has not shown through the only arguments that count -- namely, the ones that he has advanced to us in his briefing on appeal -- that the District Court abused its discretion

(or otherwise erred) in finding his discovery-related objections to the R&R meritless.[18]

There is one loose end to tie up. Cortés argues that -- his discovery-related challenges aside -- we should reverse the grant of summary judgment because the Magistrate Judge impermissibly "ruled on credibility and [weighed] the evidence" when it found that he consented to the Contest Rules. I am again unconvinced given the arguments that Cortés makes on appeal.

---

[18] The majority appears to be treating Cortés's motion to reconsider -- which concerned only the order denying Martin's motion for reconsideration (of the Cortés-friendly portion) of the order partially denying judgment on the pleadings -- as if it were a standing Rule 56(d) motion. But I cannot see how Cortés's motion to reconsider can provide a basis for finding merit to his challenge to the grant of summary judgment to Martin if the appeal of that judgment otherwise lacks merit. Even setting aside the fact that Cortés does not on appeal characterize his motion to reconsider as a Rule 56(d) motion (standing or otherwise), the District Court's denial of that motion could not itself have been a denial of any Rule 56(d) motion that the motion to reconsider implicitly contained. After all, at the time of that denial, no motion for summary judgment, for which Cortés could have been opposing pursuant to Rule 56(d), had even been filed. Nor did the District Court, in denying Cortés's motion to reconsider, purport to bar Cortés from opposing a future motion for summary judgment under Rule 56(d). In fact, when Martin did eventually file a motion for summary judgment, the District Court did not immediately grant it. Instead, the District Court merely referred the motion to the Magistrate Judge, who then entertained Cortés's discovery-related reasons for denying summary judgment. What is more, in reviewing Cortés's objections to the R&R, the District Court made clear that, even if Cortés's filing in opposition to Martin's motion for summary judgment were construed as a Rule 56(d) motion, Cortés "failed to meet the requirements" under that Rule. And, as I have explained, Cortés does not engage with that conclusion on appeal.

Although the District Court adopted the R&R "in its entirety," Cortés's briefing to us does not contest the Magistrate Judge's determination that he consented to the Contest Rules via "clickwrap agreement[]." Cortés therefore "leaves undisturbed an independent ground for affirmance." Oliveras-Villafañe v. Baxter Healthcare SA, 140 F.4th 29, 31 (1st Cir. 2025).[19]

---

[19] Cortés's challenge to the District Court deeming his copyright registration invalid is duplicative of his other challenges.